IN THE MATTER OF THE ADOPTION OF J.L.T. and M.M.T.

CA 89-444                                        788 S.W.2d 494

Court of Appeals of Arkansas
Division II
Opinion delivered May 2, 1990

86

*The Madden Law Firm*, by: *Mary E. Cress*, for appellants.

*Phil Stratton*, for appellees.

JAMES R. COOPER, Judge. The appellants in this adoption case filed a motion on January 27, 1988, to set aside a final decree of adoption entered on January 5, 1982, more than six years prior to the motion to set aside. In the petition, one of the appellants, Mary Lou Chance Ives, alleged that she is the natural mother of the two adopted children and that the adoptive parents, appellees, her mother and step-father, obtained her consent to the adoption by fraud. The other appellant, Mark Edward Jones, alleged that he was the natural father of the children and he asked the probate court to set aside the adoption because he had not received notice. The probate court found that Mr. Jones had no standing to challenge the adoption and that Ms. Ives's consent was informed, knowing and was given without fraud. Although the appellants argue six points on appeal, they can be consolidated into two issues: 1) that the trial court erred in finding that Ms. Ives's consent was not obtained by fraud; and 2) that the trial court erred in finding that Mr. Jones was not entitled to notice of the adoption and had no standing to challenge the adoption. We affirm.

In adoption proceedings, this Court reviews the record

*de novo*, but we will not reverse the probate judge's decision unless it is clearly erroneous or against the preponderance of evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. *Brown* v. *Johnson*, 10 Ark. App. 100, 661 S.W.2d 443 (1983). In cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interests. This Court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the probate court to observe the parties carry as great a weight as one involving minor children. *In re Adoption of Milam*, 27 Ark. App. 100, 766 S.W.2d 804 (1987).

The appellants, Mr. Jones and Ms. Ives, argue that the trial court erred in finding that Ms. Ives's consent was not obtained by fraud. In the case of a final adoption decree, consent to adopt may be withdrawn upon a proper showing of fraud, duress or intimidation. *Dale* v. *Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987).

Ms. Ives testified at the hearing that at the time she signed the consent she was illiterate, she could not read the consent, and that her mother read the consent to her and assured her she could have the children back when she was in a better position to care for them. She also stated that her mother told her to come to her mother's house on the day of the hearing and they would go to the hearing together. According to Ms. Ives, when she got to her mother's house, her mother had left and Ms. Ives did not attend the hearing. However, Ms. Ives admitted that she alone took the consent to the bank, signed it in the presence of a notary, and had it notarized. She also stated that while she wanted to trust her mother, she had some reservations about the consent but that she did not ask anyone else to read it to her. She also admitted that she knew that the adoption meant she was giving legal custody of the children to her mother, and that she had voluntarily given care and control of the children to her mother.

The probate court expressed concern over the fact that Ms. Ives could not read when she signed the consent but found no fraud on the part of the appellees because Ms. Ives took the consent to the bank and found a notary, had her signature

properly notarized, and returned the consent to her mother. The court also found that Ms. Ives's mother did not exert any force or undue influence on her and that, although Ms. Ives knew of the court date, she failed to appear. In light of the probate court's superior opportunity to judge the credibility of the witnesses, we cannot say that its findings on this issue are clearly erroneous or against the preponderance of the evidence. *Brown* v. *Johnson*, *supra*.

The appellants next argue that the trial court erred in finding that Mr. Jones did not have standing to challenge the adoption. They contend that Mr. Jones was entitled to notice of the adoption proceedings and that the failure by the appellees to give him notice violated the Due Process Clause of the United States Constitution.

Both Ms. Ives and Mr. Jones testified at the hearing in 1988 that Mr. Jones was the father of the two children and that they had never married. Mr. Jones stated that he lived with Ms. Ives after the first child was born and lived with her again for about four months after the second child was born. He stated that even though he was a "drunken bum" he took care of the children as best he could. He admitted that he had been in prison twice; the first time when he was seventeen or eighteen years old, and the second time in 1982. He stated further that he did not receive any notice of the adoption and that he first learned of it in 1983 after he was released from prison. He believed that both of the appellees knew he was the father of the child and knew his whereabouts at the time of the adoption. Mr. Jones did not take any legal action to legitimize the children until 1988.

Because the adoption took place in 1982, the law in place then is the relevant law. The Revised Uniform Adoption Act was adopted by our legislature in 1977. *See* Ark. Stat. Ann. §§ 56-201 to 56-221 (Supp. 1981) and Ark. Code Ann. §§ 9-9-201 to 9-9-223 (1987). Section 56-212(a)(2) (now codified at Ark. Code Ann. § 9-9-212 (1987)) provides that twenty days notice shall be given to any person whose consent is required under the Act, or a person whose consent is not required under clauses (1), (2), (6), and (9) of § 56-207. (Ark. Code Ann. § 9-9-207). According to § 56-207(3) (not one of the clauses mentioned in § 56-212), consent is not required of the father of a minor if the

father's consent is not required by § 56-206(a)(2). Under § 56-206(a)(2) (Ark. Code Ann. § 9-9-206(a)(2)) consent is required of:

> (2) the father of the minor if the father was married to the mother at the time the minor was conceived or at any time thereafter, the minor is his child by adoption, he has custody of the minor at the time the petition is filed, or he has otherwise legitimated the minor according to the laws of the place in which the adoption proceeding is brought;

It is clear that under § 56-206(a)(2) Mr. Jones's consent was not required because, by his own admission, he never married Ms. Ives, never had custody of the children, and never sought to adopt or legitimate the children until six years after the adoption. Therefore, because Mr. Jones's consent was not required, he was not entitled to notice. *See In re: Adoption of S.J.B.*, 294 Ark. 598, 745 S.W.2d 606 (1988) (reaching the same result construing Ark. Code Ann. §§ 9-9-206 and 207 (1987)).

Although *In re: Adoption of S.J.B., supra*, was decided under the Code rather than Arkansas Statutes, the provisions discussed are identical. That case held that our statutory scheme of excluding certain putative fathers from the right to consent and receive notice does not violate Due Process. Citing *Lehr v. Robertson*, 463 U.S. 248 (1983) the Arkansas Supreme Court stated:

> [U]ntil an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest in personal contact with his child does not acquire substantial protection under the Due Process Clause. Said in other words, when the father acts like a father and takes on some of the responsibilities of fatherhood, he is entitled to be treated as a father. The *Lehr* Court expressly stated: "But the mere existence of a biological link does not merit equivalent constitutional protection."

294 Ark. at 602. While we agree with the appellants' assertion that Mr. Jones's contacts with the children were more than a mere biological link, they do not rise to a level that requires Due Process protection. Prior to the adoption Mr. Jones only lived with Ms. Ives sporadically and only supported the children when

she lived with him. There is no evidence in the record that he visited the children or supported them outside the short periods of time the appellants lived together. He did not pay any of the medical bills associated with their births or take any steps to legitimate the children. We simply cannot say that Mr. Jones had sufficient custodial, personal, or financial relationships with the children to entitle him to notice.

The appellants cite Ark. Stat. Ann. § 56-138 (Ark. Code Ann. § 9-9-501 (1987)) for the proposition that Mr. Jones is a "birthparent." However, that section is part of the Voluntary Adoption Registry statutes which provide for a mutual consent registry and allows for the names of adoptees and birthparents to be disclosed in certain circumstances. We fail to see how § 56-138 is relevant to the issues raised in this case.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.