# IN THE MATTER OF THE ADOPTION OF B.A.B.

CA 92-60 842 S.W.2d 68

Court of Appeals
Division I
Opinion delivered November 25, 1992

*Christopher M. Jester*, for appellant.

*Martin E. Lilly*, for appellee.

JUDITH ROGERS, Judge. The child in this adoption case, B.A.B., was born on July 7, 1988, to appellee Tanya B., who was a single person. Shortly after the child's birth, Tanya married appellee, Scotty B. In 1990, it was established in a paternity action that John Dane L. was the child's natural father, and in October of 1990, appellant Regina W., John Dane's mother, was granted court-ordered visitation with her granddaughter one weekend a month. In November of 1990, Tanya joined Scotty in filing a petition for him to adopt the child. The court subsequently entered an order allowing appellant to intervene in the case. After a hearing, the probate judge granted the adoption after determining that the natural father's consent was not necessary due to his

failure to communicate with or support the child and upon finding that the adoption was in the child's best interest. On appeal, appellant, the child's paternal grandmother, argues that both of these findings are clearly against the preponderance of the evidence. We affirm the probate judge's decision to grant the adoption.

■ Arkansas Code Annotated § 9-9-206(a)(2) (1987) provides in part that a petition to adopt a minor may be granted only if written consent is executed by a father who has "otherwise legitimated the minor according to the laws of the place in which the adoption proceeding is brought." However, under Ark. Code Ann. § 9-9-207(a)(2) (1987), a parent's consent is not required if it is found that "the parent for a period of at least one year has failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree." There is a heavy burden placed upon the party seeking to adopt a child without the consent of a natural parent to prove the failure to communicate or the failure to support by clear and convincing evidence. *Dale* v. *Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987). As her first issue, appellant argues that the probate judge's finding that the consent of John Dane was not necessary is clearly erroneous. Because we conclude that appellant lacks standing to raise this issue, we decline to address her argument.

■ In *Quarles* v. *French*, 272 Ark. 55, 611 S.W.2d 757 (1981), the supreme court held that grandparents who have been awarded visitation rights are entitled to intervene in adoption cases involving their grandchildren for the limited purpose of offering such evidence as may be relevant to the focal issue of whether the proposed adoption is in the best interest of the children. Later, in *Cox* v. *Stayton*, 273 Ark. 298, 619 S.W.2d 617 (1981), the court ruled that grandparents did not have standing to claim error in the trial court's failure to appoint independent counsel for the natural parents in proceedings where their parental rights were terminated and their children were adopted by foster parents. The court said:

> Constitutional rights, including the guarantees of due process, are personal rights and may not be asserted by a third party. A very narrow exception exists where the issue

presented to the court would not otherwise be susceptible of judicial review and it appears that the third party is sufficiently interested in the outcome that the rights of the other party would be vigorously asserted and, thus adequately represented. We agree that the issue of the children's possible right to counsel would not otherwise be susceptible to judicial review, and therefore, we reach that issue as stated above. However, any right to counsel by the parents could be as well asserted by the parents themselves and would be easily reviewable had the parents joined in this appeal to claim such right, or had they remained as parties to the proceedings below. We therefore decline to recognize standing by these appellants to raise constitutional arguments on behalf of the parents, who themselves have declined to do so.

*Id.* at 302, 619 S.W.2d at 619-20 (citations omitted). By analogy, the court's reasoning in *Cox* is applicable here. The right of natural parents with respect to the care, custody, management and companionship of their minor children has been described as a personal right. *See Carroll* v. *Johnson*, 263 Ark. 280, 565 S.W.2d 10 (1978). As one means of protecting this right, our laws afford a natural father who has legitimated a child the privilege of consenting to an adoption, unless it is found that his consent is excused. It is apparent that the question of a natural father's consent is a matter that is personal to him. In this case, although the natural father filed an answer to the petition and declined to offer his consent to the adoption, he did not appear at the hearing and has not himself pursued an appeal of the probate judge's decision. We hold that appellant does not have standing to question the probate judge's decision on this issue.

Secondly, appellant contends that the probate judge erred in finding that the adoption was in the best interest of the child. Unlike the first issue, we do not question appellant's standing to contest this finding. *See Quarles* v. *French*, *supra*.

■■ A probate court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused and that the adoption is in the best interest of the child or individual to be adopted. *Bemis* v. *Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986); Ark. Code Ann.

§ 9-9-214(c) (Supp. 1991). While this court reviews probate proceedings *de novo* on the record, we will not reverse a probate court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses. *In re Adoption of Perkins/Pollnow*, 300 Ark. 390, 779 S.W.2d 531 (1989). In cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interests. *In the Matter of the Adoption of J.L.T.*, 31 Ark. App. 85, 788 S.W.2d 494 (1990). This court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the probate court to observe the parties carries as great a weight as one involving minor children. *Id.*

At the hearing, Tanya testified that she had married Scotty ten days after the child's birth and that Scotty's name had been placed on the child's birth certificate. She related that she and Scotty were presently attending college and were thus unemployed. She hoped that they would be better able to provide for their children with a college education. She said that she and Scotty had discussed their plans for college with her mother and Scotty's parents, who all agreed to provide financial assistance while they were in school. In addition, she said that the cost of tuition and books were paid by federal grants and that they received HUD assistance and food stamps as well. Besides the child in question, she and Scotty have two other small children. She said that Scotty was the only father figure the child had ever known and that they had a normal father-daughter relationship. Tanya also explained that her previous reluctance to allow visitation with appellant was due to her fear of the child's being around her natural father, who had a severe drug problem. She testified that if the adoption were granted she would allow appellant visitation with the child, even though she realized that she would be under no legal obligation to do so.

Scotty testified that he considered the child to be his daughter and felt that the adoption would strengthen their relationship. He said that he helps care for the child, as well as their other children. Scotty acknowledged that his work history had been poor since he was involved in a car accident in 1988. He

said, however, that he was presently in good health and would probably work during the summer break from school. Scotty further testified that he would allow appellant to continue visitation with the child.

Scotty's father, Lavaughn B., testified that he saw the children five, six and sometimes seven days a week. He said that he considered the child to be his granddaughter and that no distinction was made between the child in question and his other grandchildren. Lavaughn stated that the children were properly cared for, fed and clothed.

Dr. Michael Prince performed a psychological evaluation of the child at appellant's request. It was his opinion that the adoption would be in the child's best interest. He hesitated, however, to be entirely in favor of the adoption due to the relationship the child shared with appellant and her husband. He explained that, because of the closeness of this relationship, it would also serve the child to continue to have contact with appellant. He also felt that the loss of contact with appellant might cause the child anxiety and grief. Dr. Prince further testified though that the child deserved a "full-fledged" father and that it would be more devastating for the child to lose contact with Scotty than with appellant.

Appellant testified that she was opposed to the adoption because she loved her granddaughter and because she had little hope of maintaining contact with the child if the adoption were granted. She stated that she had a great relationship with the child and that they were very close. Appellant also informed the court that she had paid the medical bills associated with the child's birth, including the cost of prenatal care, and that she had continued providing support for the child by purchasing her clothing, shoes and toys.

It is the appellant's primary contention that the probate judge should have denied the adoption given the testimony of Dr. Prince that both the adoption and continuing contact with appellant would be in the child's best interest. However, as the court in *Quarles* v. *French, supra,* recognized, it is for the probate judge in such cases to weigh the benefits flowing to children from the granting of an adoption, as opposed to disadvantages which may result from the severing of ties between

grandparents and grandchildren. As shown by the probate judge's comments, we are satisfied that the judge carefully considered these competing interests in making his decision. Based upon our *de novo* review, we cannot say that his decision was clearly against the preponderance evidence.

Affirmed.

CRACRAFT, C.J., and COOPER, J., agree.