2005 WY 4

**In the Matter of JWT:**

**CLT, Appellant (Respondent),**

v.

**SJT and CET, Appellees (Petitioners).**

**In the Matter of JWT:**

**CLT, Appellant (Respondent),**

v.

**SJT and CET, Appellees (Petitioners).**

Nos. C–04–4, C–04–5.

Supreme Court of Wyoming.

Jan. 19, 2005.

Representing Appellant: F. Scott Peasley of Peasley Law Office, Douglas, Wyoming.

Representing Appellees: Nadine McLeod, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J. Ret.

VOIGT, Justice.

[¶1]   These combined appeals are from an order denying a motion for temporary custody, an order denying a motion to contest an adoption, and an order of adoption. We reverse and remand because the necessary relinquishments of custody, consents to adoption, and affidavit were not filed with the petition to adopt.

## FACTS

[¶2]   The appellant is the biological mother of J.W.T. After J.W.T.'s birth, the appellant and J.W.T. lived with the appellant's mother in Texas for about sixteen months. In July 2001, J.W.T. went to live with his maternal grandfather in West Virginia. Over the years, the appellant has executed several untitled documents evidencing some intent to transfer J.W.T.'s custody, or to create a guardianship, or to allow adoption:

1.   November 30, 2000, to the maternal grandfather and his wife (the appellees),

"temporary partial custody and full power of attorney," reserving right to void agreement.

2.  July 27, 2001, to the appellees, "custody."

3.  July 29, 2001, to the maternal grandmother, "full and legal permanent custody" and "permission to adopt. . . ."

4.  July 31, 2001, to the appellees, "permission to adopt," reserving visitation rights.

[¶ 3]  On June 10, 2003, the appellees filed a petition to adopt J.W.T. The petition alleged that "the natural father of the minor child is unknown." The "unknown father" was then served by publication in a newspaper in Natrona County, Wyoming. In the meantime, however, the appellant had filed a response to the petition in which she denied that the name of the putative father was unknown. In subsequent proceedings, the district court determined that the consent accompanying the petition was valid and denied the appellant's motion to contest the adoption.

## DISCUSSION

[¶ 4]  Because adoption was unknown at common law, courts must strictly construe adoption statutes. *In re Estate of Kirkpatrick*, 2003 WY 125, ¶ 12, 77 P.3d 404, 407 (Wyo.2003). And because adoption is purely statutory, the proceedings must be conducted in substantial conformity with the provisions of the statute. *In re Adoption of KJD*, 2002 WY 26, ¶ 22, 41 P.3d 522, 527 (Wyo.2002); *Matter of Adoption of AMD*, 766 P.2d 550, 552 (Wyo.1988); *In re Adoption of Strauser*, 65 Wyo. 98, 196 P.2d 862, 866 (1948). In relevant part, Wyo. Stat. Ann. § 1–22–109 (LexisNexis 2003) provides, as follows:

(a)  A written relinquishment of custody of the child to be adopted and written consent to adoption shall be filed with the petition to adopt and shall be signed by:

. . .

(iii)  The mother and putative father of the child if the name of the putative father is known; or

(iv)  The mother alone if she does not know the name of the putative father, in which case she shall sign and file an affidavit so stating and the court shall determine whether the putative father has registered under W.S. 1–22–117 and if so, shall require notice to be given to the putative father[.]

[¶ 5]  These statutory requirements simply were not followed, rendering the adoption invalid *ab initio*. If the name of the putative father truly was unknown, mother's affidavit to that effect had to accompany her written relinquishment and written consent to adoption. No such affidavit was filed. In fact, mother filed a response to the petition in which she specifically denied that the name of the putative father was unknown. At that point, the district court could not proceed with the adoption without the written relinquishment and written consent to adoption signed by the putative father, or at least without a determination whether the name of the putative father was, or was not, known.[1] A relinquishment and consent by the mother cannot bind the father. *Peters v. Campbell*, 80 Wyo. 492, 345 P.2d 234, 238 (1959).

[¶ 6]  This is not a case where mother filed a false affidavit in which she claimed not to know the identity of the putative father and the putative father later sought to contest the adoption on that basis. Neither is this a case where mother filed a truthful affidavit and the putative father later sought to contest service by publication. In those situations, the correct statutory procedures arguably having been followed, the district court might have had jurisdiction to proceed with the adoption. But here, the appropriate documentation never having been filed, the district court did not obtain jurisdiction to hear the adoption. *JK ex rel. DK v. MK*, 5 P.3d 782, 788 (Wyo.2000). In her response to the petition, the appellant was not contesting service of process on the putative father;

---

1.  Subsequent affidavits from the putative father and his mother alleged that the father was known not only to the appellant mother, but also that the appellee grandfather knew the father's identity from the date of the child's birth.

rather, she was bringing to the district court's attention the fact that the necessary consents and relinquishments had not been filed.

[¶ 7] The orders of the district court are reversed and this case is remanded for dismissal of the petition to adopt.

STEBNER, District Judge, Retired, dissenting, with whom KITE, Justice, joins.

[¶ 8] I respectfully dissent. In my view of this case, Mother has no standing to assert the arguments she makes on appeal. I certainly agree with the majority that adoption is purely statutory and therefore the proceeding must be conducted in substantial conformity with the provisions of the statute. I likewise agree that parental consent for the adoption is jurisdictional. Nevertheless, the issue presented does not deprive the district court of jurisdiction. Instead, the issue is one of the sufficiency of the notice provided to father. While the appellees did assert that the putative father was unknown in their petition for adoption, they nevertheless served "the unknown father of JWT" with notice by publication, in essence proceeding as if the putative father's consent were required. Wyo. Stat. Ann. § 1–22–109(a)(iii). In her response to the petition, Mother denied that the name of the putative father was unknown, but later stated in an affidavit that she did not know the putative father's whereabouts. In instances where the whereabouts of the putative father are unknown, the father may be served by publication and may default if he fails to answer. It does appear that there may be an issue as to whether the published notice to the "unknown father of JWT" was sufficient notice to the putative father. However, that argument is Father's to make.

[¶ 9] Indeed, it is apparent that Mother's arguments are based entirely on the putative father's rights and interests. Clearly the provisions of § 1–22–109 requiring either the putative father's consent or an affidavit that the mother does not know the name of the putative father are intended to protect the putative father's rights. Wyo. Stat. Ann. § 1–22–109(a)(iii) & (iv). The Arkansas Court of Appeals considered a somewhat similar proposition when the grandparents of the child to be adopted asserted that the father had not validly consented to the adoption. The court reasoned: "The right of natural parents with respect to the care, custody, management and companionship of their minor children has been described as a personal right." *In re Adoption of B.A.B*, 40 Ark.App. 86, 842 S.W.2d 68, 70 (1992). Therefore, the adoption statutes require the father's consent to protect that right. Id. The court then concluded that the grandparents did not have standing to contest father's consent because "[i]t is apparent that the question of a natural father's consent is a matter that is personal to him." Id. I find this to be a similar case.

[¶ 10] Mother is attempting to assert Father's protections to somehow revoke her own consent to the adoption. However, the district court found that Mother consented to the adoption, and the record supports this conclusion. Once a parent consents to adoption, she cannot revoke that consent except under specific circumstances.

> Consent to adoption and the relinquishment of a child for adoption are irrevocable unless obtained by fraud or duress, except that if the court should deny the adoption on account of a claim or objection of the putative father of the child, the court may also allow the mother of the child to withdraw her consent and relinquishment.

Wyo. Stat. Ann. § 1–22–109(d). Mother never asserted that her consent was obtained by fraud or duress; therefore, she cannot revoke her consent. Indeed, once the validity of mother's consent was established, she became a stranger to the proceedings. *Matter of Adoption of RHA*, 702 P.2d 1259, 1264 (Wyo.1985). Additionally, as evidenced by the exception provided in the above quoted statute, the putative father's consent is considered independent of mother's consent. If it were otherwise, there would be no need for the provision that "the court may also allow the mother of the child to withdraw her consent and relinquishment." Consequently, it is entirely appropriate for a district court to consider the validity of Mother's consent without considering Father's consent. In this case, Mother's consent was found to be

valid, and Mother became a stranger to the proceeding. She therefore has no further standing to object to the adoption.

[¶ 11] However, Mother now seeks to revoke her consent by taking advantage of the exception provided by § 1–22–109(d). She does so by asserting objections that Father could possibly make to the adoption proceeding. It does appear that some irregularities exist regarding notice to the putative father. Nevertheless, it is Father that has standing to object to these irregularities. Mother cannot now use the arguments that Father could possibly make to try to revoke her own valid consent. See *Burdette v. Dietz*, 18 Ark.App. 107, 711 S.W.2d 178, 180 (1986) (mother has no standing to raise lack of proper service on natural father); *In re Adoption of Trent*, 229 Kan. 224, 624 P.2d 433, 439 (1981) (one parent's consent is not binding on the other parent, therefore one parent has no basis to challenge the other parent's consent). While the putative father apparently knows of these irregularities, as evidenced by his affidavit, he has not formally contested the adoption to assert the arguments that Mother makes. I would, therefore, affirm the district court's decision.