SLIP OPINION


Cite as 2016 Ark. App. 598

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV–16–120

| | |
|---|---|
| | **OPINION DELIVERED:** DECEMBER 14, 2016 |
| PAMELA DAWN REAGAN | |
| APPELLANT | APPEAL FROM THE HOWARD COUNTY CIRCUIT COURT [NO. 31PR–2014–64–1] |
| V. | |
| | HONORABLE TOM COOPER, JUDGE |
| JULIE DODSON AND DENNIS DODSON | |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Pamela Reagan appeals the November 2, 2015 order by the Howard County Circuit Court granting guardianship over her three minor children to Pamela's mother and stepfather, appellees Julie Dodson and Dennis Dodson. Pamela is not challenging the facts supporting the trial court's decision finding her unfit and placing her three children with the Dodsons; rather, she argues that the trial court erred in denying her motion to dismiss the guardianship petition and motion for directed verdict, which were based on two facts: (a) the original guardianship petition was unsigned; and (b) the Dodsons, as petitioners, never served or gave notice to Jeremy Pumphrey, the biological father of Pamela's children. She also argues that the trial court erred when it granted guardianship to the Dodsons without determining whether Pumphrey was unfit. We affirm.

SLIP OPINION

Pamela is the mother of C.P., age six; C.P., age three, and K.P., age two. The Dodsons originally were represented by Gregory Vardaman, but later substituted Jana Bradford as counsel. Pamela was originally represented by attorney Darryl Taylor. She too later substituted counsel, eventually being represented by Tim Parker. The petitions for guardianship allege that Pumphrey is the biological father of all three children, and his name appears on their birth certificates.

On November 26, 2014, the Dodsons filed a verified ex parte petition for emergency guardianship of the person and estate, alleging that Pamela's three children were in danger due to her drug use as evidenced by a meth pipe being removed from the hands of Pamela's then ten-month old baby and Pamela's intention to reunite with Pumphrey, the alleged putative father, who until recently had been incarcerated. The trial judge signed the emergency ex-parte temporary guardianship over the children to the petitioners the same day. Thereafter, the temporary guardianship was extended numerous times, and twice upon the agreement of the parties.

A signed amended petition for guardianship was filed by new counsel on September 10, 2015, and on September 29, 2015, a hearing was conducted in the Howard County Circuit Court. Pamela's attorney, Parker, after reviewing the court file and prior to testimony being taken, called to the trial court's attention in chambers, for the first time almost a year into the case, the fact that the original emergency petition for guardianship had not been signed prior to filing. Immediately before the final hearing began, Parker orally moved to dismiss the proceedings because the original emergency petition, although verified by Mrs. Dodson, had not been signed by Vardaman. He argued that it was a void pleading

and that the trial court had no jurisdiction. The trial court inquired as to whether Parker had any case law involving children where the trial court was found not to have jurisdiction requiring the case to be dismissed, and Parker replied that he did not. This deficiency, as well as Pamela's objections and motion, were put on the record in the courtroom shortly afterward with Pamela's attorney arguing the same grounds for dismissal as well as that the children's biological father, Pumphrey, had not been served and had received no notice of the hearings in the case.

The trial court allowed the Dodsons' counsel, Bradford, to respond, and she acknowledged the unsigned emergency petition filed with the trial court on November 26, 2014, that was verified by her clients. Bradford explained that since that time period, there had been two temporary orders entered and that Pamela had filed a motion to continue the temporary guardianship pending completion of discovery on or about June 29, 2015. Bradford noted that previously there had been no objection to the fact that the attorney did not sign the original verified petition.

Bradford also explained that, since taking over as counsel, she had filed a signed amended petition on the guardianship, along with an alternative motion for grandparents' visitation rights, none of which had been responded to by Pamela. She stated that two motions for drug screens had been filed, one for Pamela and one for Pumphrey, the putative father, and neither of those had been responded to by Pamela. Parker responded that because Pumphrey had not been served, he would not be required to respond to it. Parker stated that he did not think he had ever consented to any time extensions.

In denying the motion to dismiss, the trial court ruled that, with respect to the petition not being signed, in this situation where the grandparents had the children in their care and the mother was there, the court could not imagine that it would not be in the best interest of the children for it to hear the case and make a determination on the petition.

At the conclusion of the Dodsons' case and at the conclusion of the hearing, Parker moved for directed verdict on the same basis that had been raised before—that the original petition had not been signed, which rendered the matter a nullity. The trial court again denied the motion and the renewal.

The trial court granted the petition for guardianship on November 2, 2015. The guardianship order included findings that Pamela was unfit and that a guardianship was necessary for the children based on overwhelming evidence, including Pamela's drug use, the children's malnutrition, and one child's broken arm without evidence that medical treatment was provided. According to the order, Pamela did not visit the children from the time of the ex parte hearing and the temporary hearing until the final hearing. Pamela was convicted of possession of drug paraphernalia subsequent to the filing of the petition for guardianship. The trial court made a finding that Pamela continued to associate with the alleged putative father, Pumphrey, a convicted felon. In the order, the trial court did not address Pumphrey or find that he was unfit. Pamela filed her notice of appeal on November 13, 2015.

## I. *Denial of Pamela's Motions Based on Original Petition Being Unsigned*

The Arkansas Supreme Court has stated that when it reviews motions to dismiss based upon questions of law, it conducts a de novo review. *Henry v. Continental Cas. Co.*,

2011 Ark. 224, 381 S.W.3d 802. Similarly, Arkansas' appellate courts conduct a de novo review of a trial court's construction of a court rule. *Sturdivant v. Sturdivant*, 367 Ark. 514, 241 S.W.3d 740 (2006).

Pamela argues that Arkansas courts generally require complaints, petitions, and writs filed therein to be signed, relying on *Carrington & Pryor v. Hamilton*, 3 Ark. 416, 418 (1841), where our supreme court explained that an unsigned declaration is a mere nullity that cannot form the commencement of an action. Pamela notes that Arkansas continues to follow this holding through our Rule 11 of the Arkansas Rules of Civil Procedure (2016), which provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion or other paper and state his address and telephone number, if any.

Rule 11 also states that "if a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant."

It is undisputed that this is a guardianship proceeding, a probate case which has been deemed a "Special Proceeding" within the meaning of Arkansas Rule of Civil Procedure 81 (2016). Accordingly, the Arkansas Rules of Civil Procedure do not apply in instances where the statute governing the proceedings creates a different procedure. *See In Re W.L.*, 2015 Ark. 289, 467 S.W.3d 129. Although Pamela submits that nowhere in the guardianship statutes is there a provision excusing the signature of a litigant or his attorney from the original petition, the procedure for preparing a petition provided in Arkansas Code Annotated section 28-65-207 (Repl. 2012) likewise does not provide that an attorney must

sign the petition, or what should happen if a pleading is not signed. It does not address the signature requirement at all.

Guardianship proceedings, as special proceedings, have additional built-in protections above and beyond the Rule 11 signature requirement. When emergency orders are entered in guardianships, a temporary hearing is required to be held within three days. Such a hearing was held here, and although not within the three-day period, the delay was not objected to before the trial court. The trial court heard testimony at that temporary hearing and continued the guardianship. Then, two weeks later, the parties again appeared before the trial court, and by agreement continued the guardianship. We hold that the matter was in compliance with the current added-statutory safeguards.

Even where Rule 11 requires a pleading to be signed by at least one attorney of record, it also provides steps to be taken if a party fails to sign a pleading. Such steps include that an attorney be given an opportunity to correct the problem upon notice of his failure to sign a pleading. Rule 11 provides for possible sanctions when an attorney does not sign a pleading after notice, and being ordered to do so does not require an automatic dismissal of a pleading as argued by Pamela.

It is undisputed the signature issue was not raised until immediately prior to the beginning of the September 29, 2015 hearing held to address the amended petition for guardianship that was filed on September 10, 2015. The trial court could have, and likely would have, required the pleading to be signed had this technical error been pointed out. Instead, Pamela, through her then attorney, filed a motion on January 28, 2015, to dismiss the petition for emergency guardianship, quash the summons issued herein, and to set aside

the temporary order. She raised several issues in that motion, but she did not raise any objection about the unsigned petition. The parties also appeared for a hearing on that date. The record is void of any indication that Pamela raised any issue about the Dodsons' attorney's failure to sign the original pleading at that hearing. It was ordered that they schedule a final hearing within ninety days. The parties entered into an agreed order whereby it was reflected that they continued the temporary guardianship, were attempting to consummate an agreement, and they waived time limits, and they agreed that the agreed order would expire within ninety days from April 7, 2015, if no final hearing was held.

Parker entered his appearance in the case for Pamela on June 8, 2015. On June 29, 2015, he filed a motion seeking that the temporary order continue, allowing him time to prepare for a hearing. There was no mention of Vardaman's failure to sign the original petition. On July 1, 2015, the parties entered into a second agreed order, which continued the temporary guardianship.

Vardaman withdrew as counsel for the Dodsons on August 4, 2015, and an order was entered the same day. The Dodsons' new counsel, Bradford, entered her appearance on August 7, 2015. The Dodsons then filed a motion to extend temporary guardianship on August 7, 2015, and filed an emergency ex parte motion to extend temporary guardianship and request for emergency hearing on August 11, 2015. An ex parte temporary order to extend temporary guardianship was entered on August 12, 2015, setting the matter for hearing on September 29, 2015. At some point in the case, motions for drug screens for both Pamela and Pumphrey were filed.

The Dodsons filed an amended petition for guardianship of the person and estate and, alternatively, petition for grandparents' visitation rights on September 10, 2015. The amended petition was properly signed by Bradford, and the final hearing was held on September 29, 2015.

We hold that it was unnecessary for the trial court to follow the remedial procedure set out in Rule 11 in this particular case because at the time of the final hearing the issues related to the facts pled in the unsigned pleading were properly before the trial court and were tried pursuant to the subsequently signed amended petition for guardianship. The failure to sign the original petition appears to have been missed by everyone involved until raised by Pamela at the final hearing. Two separate hearings were held for the trial court to verify a basis in fact to continue the guardianship—on January 20, 2015, when the trial court heard testimony from the Dodsons, and again on January 28, 2015, when the parties agreed that the temporary order of guardianship would be continued. The parties, including Pamela, attended at least one of the hearings with counsel. The oversight was remedied by the filing of the signed amended petition. *See Hackleton v. Malloy*, 364 Ark. 469, 221 S.W.3d 353 (2006). Accordingly, we hold that the trial court did not err.

II. *Denial of Pamela's Motions Based on Neither Service nor Notice to Pumphrey*

This issue turns on our court's interpretation of the Arkansas guardianship statutes and the issue of notice. Arkansas appellate courts review issues of statutory construction de novo as it is for the reviewing court to decide what a statute means. *GGNSC Holdings, LLC v. Lamb by and Through Williams*, 2016 Ark. 101, 487 S.W.3d 348. The basic rule of statutory construction is to give effect to the intent of the legislature. *Id*. Our supreme court has stated

that when the language of the statute in question is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory construction. *Id.*

Arkansas Code Annotated section 28-65-104 (Supp. 2015) provides that persons under the age of eighteen years of age whose disabilities have not been removed are "incapacitated persons" as a matter of law. Section 28-65-204 (Repl. 2012), entitled "Preferences," states that the parents of an unmarried minor, or either of them, if qualified and suitable shall be preferred over all others for appointment as guardian of the person. Section 28-65-205 (Repl. 2012) provides that the petition for guardianship shall state, *inter alia*, the names and addresses of the persons, most closely related to the incapacitated person by blood or marriage. Section 28-65-207(b)(2) (Repl. 2012), entitled "Notice of Hearing for appointment," provides that "*before the court shall appoint a guardian . . . notice of the hearing of the application for appointment of the guardian shall be served upon the following . . . (2) The parents of the alleged incapacitated person, if the alleged incapacitated person is a minor…*" (Emphasis added.)

Our supreme court characterized the rights of natural parents in *In Re S.H.*, 2012 Ark. 245, at 8–9, 409 S.W.3d 307, 313 (S.H. 1), holding that "parents have a fundamental liberty interest in the care, control, and custody of their children." *See also Troxel v. Granville*, 530 U.S. 57 (2000). In *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), the Supreme Court held that fathers of children born out of wedlock enjoyed the same fundamental due-process rights under the Fourteenth Amendment to the U.S. Constitution to their children as do married mothers of children.

Based on the holding in *Stanley*, Pamela suggests that under the Due Process Clause of the Fourteenth Amendment, Pumphrey, as the father of the minor children born out of wedlock, is entitled to a hearing on his fitness as a parent before his children may be taken from him by a guardianship order. *Id*. Here Pumphrey never was served with either a copy of the guardianship petition or notice of any hearings, and there is also nothing in the record where the trial court found Pumphrey to be unfit.

Constitutional rights, including the guarantee of due process, are personal in nature and may not be asserted by a third party. *See Kidd v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 450 (holding that a custodial parent lacked standing to raise the issue of lack of proper service on noncustodial parents in an adjudication proceeding). Arkansas appellate courts have consistently held that one party to an action lacks standing to raise an argument on behalf of a party that has not appealed. *See Arnold v. State*, 2011 Ark. 395, 384 S.W.3d 488; *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007); *Matter of Adoption of B.A.B.*, 40 Ark. App. 86, 842 S.W.2d 68 (1992). A very narrow exception is explained in *Matter of Adoption of B.A.B.*, 40 Ark. App. at 88–89, 842 S.W.2d at 70, where the issue presented to the court would not otherwise be susceptible to judicial review and it appears that the third party is sufficiently interested in the outcome that the rights of the other party would be vigorously asserted and, thus adequately represented. That exception does not apply here; therefore we decline to recognize standing by Pamela on behalf of Pumphrey.

III. *Appointment of Guardian Where Pumphrey Not Found to be Unfit*

The same standard of review set forth in the previous point, de novo, applies here as well. *See GGNSC Holdings, LLC, supra.* Fathers, including fathers of children born out of

10

wedlock, have fundamental rights under the Fourteenth Amendment to make decisions concerning the care, custody, and control of their children. *Stanley*, *supra*. Because Pumphrey was never found by the trial court to be unfit, Pamela argues that it was clear error for the trial court to grant the guardianship. She maintains that constitutional arguments aside, under the guardianship statutes, specifically section 28-65-204, Pumphrey enjoyed a statutory preference for appointment as guardian of his children. Given the federal case law characterizing the fundamental rights of parents to raise their children as they see fit, it is Pamela's position that the parents of minor children, unless first found to be unfit, enjoy virtually a conclusive preference. *See Stanley*, *supra*. She submits that, absent a finding by the trial court that both parents of the minor children were unfit, it was clear legal error for the trial court to appoint a legal guardian over their children, thus depriving the parents of their fundamental constitutional rights.

As in her previous point on appeal, here Pamela attempts to assert the rights of a third party who has not appealed. Because Pamela lacks standing to raise this issue on behalf of another party, we decline to address it. *See Kidd*, *supra*; *Seymour*, *supra*.

Affirmed.

KINARD and HIXSON, JJ., agree.

*Parker Law Firm*, by: *Tim S. Parker*, for appellant.

*Tucker Law Firm*, by: *Benny M. Tucker*, for appellees.