2010 Ark. App. 358

**Clarence Jay ARENDALL, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–743.**

Court of Appeals of Arkansas.

April 28, 2010.

Debra J. Reece, Russellville, AR, for appellant.

Dustin McDaniel, Attorney General, Karen Virginia Wallace, Assistant Attorney General, Little Rock, AR, for appellee.

ROBERT J. GLADWIN, Judge.

Dr. Clarence Jay Arendall appeals his April 1, 2009 conviction in Crawford County Circuit Court on two counts of second-degree sexual abuse. On appeal, he contends that the jury's verdict was not supported by sufficient evidence; that the trial court abused its discretion in denying his motion to sever the two charges; and that the trial court abused its discretion in allowing nine witnesses to testify and excluding appellant's proffered evidence regarding one victim's hot-check charges pursuant to Rule 404(b) (2009) of the Arkansas Rules of Evidence. We affirm appellant's conviction.

### Statement of Facts

A felony information was filed April 1, 2008, alleging that appellant committed two counts of sexual assault on or about February 13 and 14, 2008, in violation of Arkansas Code Annotated section 5–14–125 (Supp.2009). Prior to trial, appellant filed a motion to exclude witnesses,[1] a motion to sever offenses, and a motion to exclude Rule 404(b) witnesses. At the pre-trial hearing, the trial court denied the motion to sever, the motion to exclude Rule 404(b) witnesses as to those witnesses who were patients, and an oral motion to admit evidence of a pending felony overdraft case against one of the victims under Rules 607 and 609 (2009) of the Arkansas Rules of Evidence.

At trial, Brett Hartley, an Alma police officer, testified that he took the first report against appellant on July 26, 2007, and referred that victim to the medical board. A second complaint against appellant was filed by Charlotte Adams on February 13, 2008. On March 26, 2008, Debra Davis filed the third complaint against appellant. None of the three victims were allowed to read the others' statements. They did not know each other and had no connection to each other, but each of their statements was alike. When the police department allowed a television broadcast of their investigation and a warrant was issued for his arrest, seventeen other reports against appellant were made, and appellant was arrested on March 31, 2008.

Charlotte Adams testified that appellant had been her family's doctor, and she had seen him for pneumonia, back problems, and the like. On February 13, 2008, she saw appellant for complaints related to her lower back and right leg. Appellant asked Ms. Adams to stand up while he remained sitting on his stool, which had wheels. He moved around and felt Ms. Adams's lower back, then reached around her waist and tried to unbutton her pants. He asked her to unbutton them, and when she complied, he pulled them down to her

---

1. This motion to exclude two 404(b) witnesses that had been disclosed to the defense the week before trial is not at issue in this appeal, as the defendant declined the trial court's offer of continuance.

knees. She did not have on underwear, and there was no one else in the room. She did not remember if he wore gloves, but he did feel her lower back and buttocks, running his hand from her knee to the inside of her thigh, touching her vagina, then sliding it back down. He put his hand on her clitoris, rubbed four or five times, and said that he did not want to do anything inappropriate. He wheeled in front of her and said, "Nice shave job," then laughed, and said that he should bend her over the table. He laughed again, felt her knee, and started to lift up her shirt. Ms. Adams pulled her shirt down and began pulling her pants up. She said she felt as if it were a dream; she did not scream; she was in shock; she did not tell him to stop; and she just froze. When she pulled up her pants, she said that appellant looked scared. She said she was angry when she realized what was happening and that appellant offered to get her sample drugs.

Ms. Adams walked out, paid, and left. She said she cried in her truck, and that nothing like this had ever happened before in the years she had known him. She drove straight to the police department to file a report. She went back a few days later to make a written statement for Detective Hartley. She agreed to help the police investigate and made two telephone calls to appellant. She went into appellant's office on March 5, 2008, wearing a recording device. She acknowledged that her attorney filed a civil lawsuit against appellant on March 1, 2008, seeking $250,000 in damages, plus punitive damages. She also admitted to having seen Debra Davis's statement at appellant's medical-board hearing where she met Ms. Davis in June 2008. Finally, she said that Capital One had filed a $3700 judgment against her. She told the trial court that she did give appellant consent to give her an exam, but not to touch her clitoris, the

inside of her thighs, or "up by her vagina." She further testified that she did not give him permission to say nasty things to her.

Officer Doug McAlister, a senior special agent with the Criminal Investigation Division of the State Police, testified that he was called to assist Detective Hartley with the investigation. He and Detective Hartley arranged for Ms. Adams to make telephone calls to appellant and to wear the recording device when she went to appellant's office. The transcript of the meeting between Ms. Adams and appellant was admitted as evidence.

Debra Davis testified that she had taken her son and husband for appointments with appellant and went to see him herself on February 14, 2008, for lower-back and shoulder pain. Appellant told Ms. Davis to stand up, unbuttoned her pants and belt, and sat down on the chair behind her. He was not wearing gloves, and he ran his fingers down the side of her legs, pulling down her pants and underwear. When Ms. Davis tried to pull her pants back up, he told her to wait. She stood back up, and appellant put his hands on the outside and the inside of her leg, rubbing back and forth against her vagina and thigh. He asked her if it hurt, and she told him no. He said, "Dang girl you got a nice butt." Ms. Davis turned to the side and pulled her pants up. He commented that even though she had children, she had no stretch marks. Ms. Davis opened the door and called her three-year-old son into the room because she was afraid. Appellant asked her questions about whether she had had a pap smear, and suggested she come back to him and get one. He wrote her a prescription and told her to come back in a month. She did not make another appointment. She eventually called an attorney, who contacted police. Her attorney filed a lawsuit against appellant but did not seek a specific sum of money. Ms.

Davis contacted the medical board and she filed a police report on March 26, 2008. She reiterated that she did not give appellant permission to touch her vagina.

Pursuant to Rule 404(b), the State called several witnesses that had been patients of appellant. Each testified to similar scenarios that occurred while being examined by appellant as occurred during the exams complained of by Ms. Davis and Ms. Adams.

The State called Dr. Robert Wendell Ross, a family-practice doctor for thirty-nine years, who explained how his office runs, including the procedures with nurses, gowns, and paper sheets for covering. He testified that he would never disrobe a female himself, that he had never unbuttoned someone's pants and pulled them and their underwear down, and that there is always a paper sheet that lays across the patient's lap. He said he could not think of a reason why he would need to examine a woman's vagina in connection to lower-back pain. He testified that he would refer someone to a specialist if anti-inflammatory medicines and muscle relaxers did not help their lower-back pain. He said he has never had a woman remove her panties for a back exam, and that he would not examine a woman's breasts if she had come to him with a sore throat. He said that it would be inappropriate not to have a nurse in the room during an examination.

When the State rested its case, appellant moved to renew his motion to exclude two Rule 404(b) witnesses that had not been disclosed to him in a timely manner prior to trial, and the trial court denied the motion. Appellant then moved to exclude the remaining 404(b) witnesses, arguing that the evidence was not admissible to show intent, motive, plan, or scheme. He argued that, other than giving the laundry list, the State had never specifically stated its basis for allowing the evidence under Rule 404(b). He claimed that the witnesses testified only for the purpose of showing that he was a bad character and not for any reason listed in 404(b). The trial court denied that motion, reminding appellant that he had been given some relief by the court's limiting of the number of witnesses.

Appellant also moved to renew his oral motion regarding the introduction of certain checks that went to the issue of credibility of a witness. He made the arguments he had made before trial regarding Rules 404, 609, 607 and 608. The trial court denied this motion. Finally, appellant moved for a directed verdict arguing that the State presented insufficient evidence to prove sexual contact or forcible compulsion.[2] The trial court denied his motion. Appellant renewed his motion for directed verdict at the close of the defense's case, along with the other motions listed above, and they were again denied. The jury returned verdicts of

---

2. In his brief, appellant states, "In the instant case, the State purported to prove, and apparently the jury believed, Dr. Arendall engaged in sexual contact with Ms. Adams and Ms. Davis. While sexual gratification is a third element of the crime that is found in the definition of sexual contact, sexual gratification, while not conceded by Dr. Arendall, is assumed for purposes of this "sufficiency of the evidence" review, since the jury necessarily had to find sexual contact in order to convict Dr. Arendall." The State interprets this as appellant challenging only the sufficiency of the State's proof of the element of forcible compulsion as to each charge. Thus, he does not challenge the jury's conclusions that he committed acts of sexual contact, i.e., acts of sexual gratification against the two victims involving "touching, directly or through clothing," the victim's sex organs, buttocks, anus, or breast. Ark.Code Ann. §§ 5–14–101(10) and 125(a)(1) (Supp.2009). We agree with the State's interpretation.

guilty on both counts of second-degree sexual abuse, and appellant was sentenced to two concurrent five-year terms of imprisonment. A timely notice of appeal was filed, and this appeal followed.

### Sufficiency of the Evidence

This court treats a motion for directed verdict on appeal as a challenge to the sufficiency of the evidence. *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007). We will affirm the circuit judge's denial of a motion for a directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id.* Substantial evidence is defined as "evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." *Young v. State*, 370 Ark. 147, 151, 257 S.W.3d 870, 875 (2007). Furthermore, "[t]his court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered." *Id.* In determining whether there was substantial evidence to support the verdict, this court looks at all of the evidence presented, including any evidence that is alleged to have been admitted in error. *See, e.g., Goodwin v. State*, 373 Ark. 53, 281 S.W.3d 258 (2008). In addition, the credibility of witnesses is an issue for the jury and not the court. *See Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The factfinder is free to believe all or part of a witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Appellant argues that his motion for directed verdict should have been granted because the State failed to prove any evidence of forcible compulsion. Arkansas Code Annotated section 5–14–125(a)(1) provides that a person commits sexual assault in the second degree if the person engages in sexual contact with another person by forcible compulsion. "Forcible compulsion" is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark.Code Ann. § 5–14–101(2) (Supp.2009).

Appellant contends that in a case in which there is no express or implied threat of death, physical injury, or kidnapping, in order to convict someone of second-degree sexual abuse, the State must prove there was "physical force" in order to prove forcible compulsion. Further, since the statute already requires touching within the element of sexual contact, "physical force" must be something more than mere touching. He cites *Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005), where the Arkansas Supreme Court held that forcible compulsion was evidenced by actions including shoving a victim against a wall, locking her in a room, pushing her against a table, and touching her buttocks and breasts. Forcible compulsion was also found in *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289, where the defendant used physical force against the victim when she refused to have sex with him.

Finally, appellant cites *Nelson v. State*, 262 Ark. 391, 557 S.W.2d 191 (1977), which was decided when physical force was still a necessary element of the rape of a child. In *Nelson*, the court found no evidence of forcible compulsion, even though there was clear evidence of sexual advances to which the child had previously submitted, where a child let her stepfather into her room after he banged on the door for fear he would have a heart attack if he were not allowed in. *Id.* Appellant herein argues that if merely touching a person sexually were enough to be forcible compulsion, there would have been sufficient evidence in *Nelson* of forcible compulsion, since there was testimony of previous sexual contact.

Appellant contends that there was no testimony from either Ms. Adams or Ms. Davis that he threatened them, either expressly or impliedly, with death or physical injury, and he did not threaten to kidnap them or anyone else. Therefore, he contends that the State was required to show physical force in order to prove second-degree sexual abuse. He argues that Ms. Adams's testimony presented absolutely no evidence of physical force or any sort of threat. He asserts that she may have been uncomfortable or shocked, but until and unless he tried to compel her to do something, he did not use forcible compulsion on her. He asserts that he did not prevent her from leaving, refuse to open the door, or continue to touch her.

Similarly, he argues that he used no physical force on Ms. Davis. Her testimony was that he said "wait" when she started to pull up her pants. She stopped and let him proceed with the examination. She did not ask him to stop or tell him that she was uncomfortable with what he was doing. He argues that this was a consensual exam, regardless of whether it was unorthodox. He contends that the only physical impact was the touching that was used by the State to show sexual contact. Because sexual contact and physical force are separate elements, he argues that touching alone cannot constitute the physical-force element of the statute.

The supreme court has defined "physical force" as "any bodily impact, restraint or confinement, or the threat thereof." *Freeman v. State,* 331 Ark. 130, 132, 959 S.W.2d 400, 401 (1998). The test used to determine whether there was physical force is "whether the act was against the will of the party upon whom the act was committed." *Id.* at 133, 959 S.W.2d at 401. The quantum of force need not be considered as long as the act is committed against the victim's will. *E.g., West v.*

*State,* 27 Ark. App. 49, 766 S.W.2d 22 (1989). Appellant argues that forcible compulsion must be more than touching, as touching is part of the definition of sexual contact and as the same touching could not satisfy both elements of the crime. However, that argument need not be reached because in each victim's sexual assault, there was forcible compulsion in the form of physical force or the threat of physical injury separate from the touching required for sexual contact.

First, Ms. Adams testified that appellant had been her family doctor prior to her assault on February 13, 2008. He had never acted inappropriately until that date. While she consented to being touched for the purpose of a medical exam, that did not include consent for him to touch her vagina, clitoris, or pubic area, or to disrobe her beyond what was necessary for a legitimate medical exam. He tried to unbutton her jeans and pull up her shirt, all acts of physical force that were unnecessary for the exam. Appellant commented on her shaved pubic area and said he "should just bend her over the table," a statement both Ms. Adams and the jury easily could interpret as a threat of forcible sexual intercourse. This proof meets the definition of forcible compulsion required by the statute and is sufficient.

Ms. Davis's testimony was that she had had several doctors check her joints, but none had ever pulled her pants down to perform the examination. She did not believe a lower-back examination required appellant to put his hands on her vagina, and she stated that none of the other doctors who had examined her ever touched her vagina. Dr. Ross agreed that appellant's actions were inappropriate and unnecessary for a legitimate medical exam. The element of forcible compulsion was proven in regard to Ms. Davis's claim, as appellant used physical force to undress

her beyond the point necessary for a legitimate medical exam and then, by refusing to allow her to re-dress by telling her to wait when she tried to do so.

Appellant argues that these women consented to his actions. The State claims that the women's trust in appellant and their shock at being treated this way by a medical doctor caused them to protest his actions neither as quickly nor as strongly as they would have had he not been in that position of trust and authority. Nevertheless, they did not consent, and his actions were committed against their will. Thus, there was sufficient evidence before the trial court that appellant used forcible compulsion to perpetrate his crimes, and we affirm.

## ⌐₁₂Severance

Appellant contends that the trial court erred in failing to sever the charges against him pursuant to Rules 21.1 and 22.2 of the Arkansas Rules of Criminal Procedure. Rule 21.1 provides:

Two (2) or more offenses may be joined in one (1) information or indictment with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

(a) are of the same or similar character, even if not part of a single scheme or plan; or

(b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ark. R.Crim. P. 21.1 (2009). Rule 22.2 states:

(a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of offenses:

(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

(ii) if during trial, upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Ark. R.Crim. P. 22.2 (2009). The decision to sever offenses is discretionary with the trial court. *Kemp v. State,* 348 Ark. 750, 74 S.W.3d 224 (2002). Moreover, we will affirm a trial court's denial of a motion to sever if the offenses at issue were part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Id.*

Appellant contends that under Rule 22.2, he was entitled to severance of the two charges of second-degree sexual abuse and separate trials on each. He also claims that under ⌐₁₃Rule 21.1, the State may, but is not required to, join several offenses under one information or indictment, but if those offenses are not part of a single scheme or plan, the defendant, under 22.2, has the right to a severance. Rule 22.2 is not permissive, but gives an absolute right of severance when the offenses are joined solely on the ground that they are of the same or similar character. *Ruiz v. State,* 273 Ark. 94, 617 S.W.2d 6 (1981).

Appellant claims *Clay v. State,* 318 Ark. 550, 886 S.W.2d 608 (1994), is directly on point, wherein the Arkansas Supreme Court held that the trial court abused its discretion in denying a motion to sever sex offenses against different child victims when the offenses were of a similar char-

acter but were not part of a single scheme or plan. He also cites *Campbell v. State,* 2009 Ark. 540, 354 S.W.3d 41, where the Arkansas Supreme Court quoted *Clay* in saying joinder of charges that are not part of a single scheme or plan poses a grave risk of prejudice.

■ Appellant contends that the State had no basis on which to assert that the charges were part of a single scheme or plan. He claims that the State offered no argument, testimony, or proof that he planned the offenses in advance as part of a single scheme, nor was there any allegation or proof that the crimes were part of one criminal episode. *See Clay, supra.* He argues that, in this case, these two women were seen in separate appointments on separate days, thus these were clearly not a continuing episode.

The State argued at the hearing held on March 4, 2009, that the charges against appellant were appropriately joined under either Rule 21.1(a) or (b). The trial judge agreed and refused to grant the motion to sever. This ruling was correct, in that appellant committed virtually the same behavior with Ms. Adams and Ms. Davis on consecutive days in his office exam room without a nurse present, without giving either of them a gown or sheet to cover themselves, and while making sexual comments to each.

The instant case can be distinguished from *Clay,* in that the offenses there occurred over a twelve-month period, involved different charges with different culpable mental states, and were committed in different manners, against different victims, and at different locations. Here, the two charges were for the same crime, the assaults occurred within a one-day period, at the same location, in the same manner, and the victims' narrative of events were virtually identical. Therefore, no abuse of discretion was committed by the trial court when it denied severance.

### Rule 404(b) Issues

Under Arkansas Rule of Evidence 404(b), any evidence of a person's other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *See* Ark. R. Evid. 404(b). However, the evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.*

■ The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, and we will not reverse absent a showing of manifest abuse of that discretion. *See Lamb v. State,* 372 Ark. 277, 275 S.W.3d 144 (2008). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Phavixay v. State,* 373 Ark. 168, 282 S.W.3d 795 (2008). In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *See id.* Any circumstance that ties a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible as evidence. *Jackson v. State,* 359 Ark. 297, 197 S.W.3d 468 (2004).

Appellant contends that the trial court abused its discretion on two evidentiary matters when it allowed the State to present 404(b) witnesses and refused to allow the defense to impeach one of the alleged victims with her prior bad acts. First, appellant cites *Donaldson v. State,* 2009 Ark. App. 119, 302 S.W.3d 622, where this court reversed the defendant's conviction

and remanded for a new trial where Rule 404(b) evidence was allowed by the trial court. In *Donaldson*, the defendant was accused of sexual assault in the second degree against three young women. *Id.* The charges were severed, but the trial court allowed evidence of the second and third charges in as Rule 404(b) evidence, ruling that the similarity of the victims' ages, the fact that they were each employed at the movie theater where the defendant was a guard, and the pattern of abuse were all relevant to the intent of the charged offense. *Id.* The State argued that the circuit court was free to determine that (1) the defendant intended to establish a rapport of ease with each of the alleged victims, and (2) he then used the relationships with the girls to touch them inappropriately. *Id.* The defendant's defense to the charge was that what happened between the third victim and him was consensual. *Id.* The State argued that, as such, evidence that he previously had treated two other young female co-workers similarly was independently relevant to establish that appellant sexually assaulted the third victim in the case, thus the evidence was properly admitted. *Id.* However, this court held that there was no issue of intent with respect to the offense charged in the case. *Id.* This court could not perceive of any independent relevance that the testimony of the alleged victims in the other two severed charges would have in the case involving the third victim. *Id.* We stated, "This is precisely the type of evidence that Rule 404(b) was designed to exclude." *Id.* at 9, 302 S.W.3d at 628.

Appellant contends that, as was pointed out by the Arkansas Supreme Court in *Clay*, if the State is allowed to pile up multiple charges in one case against a defendant, the jury is more likely to convict, as opposed to listening to the evidence on one charge only and finding it wholly insufficient. *Clay, supra.* Appel-

lant argues that the danger is increased that a jury might wrongfully convict when multiple uncharged offenses are brought into evidence. Here, in addition to the testimony from Ms. Adams and Ms. Davis, nine other women testified. Appellant claims that the evidence from these nine women was offered by the State in an attempt to show that he had sexually abused patients before and therefore was likely to have done it to Ms. Adams and Ms. Davis. He urges that none of the nine witnesses' testimony showed his intent, plan, or motive to abuse Ms. Adams and Ms. Davis. He argues that the acts described by the nine witnesses were all dissimilar. Further, he claims that Dr. Ross's testimony addressed the complaints of the nine witnesses, which would only confuse the jury. Appellant maintains that Rule 404(b) specifically protects a defendant from "propensity" evidence. However, he asserts that similarity in an act is not an exception to Rule 404(b), but is excluded by it.

We hold that the trial court did not abuse its discretion in allowing the nine witnesses to testify. *Donaldson, supra*, is distinguishable from the instant case. There, the only similarities between the incidents allowed into evidence under Rule 404(b) and the incident charged was that they involved young women that the defendant met while working at a movie theater; however, the alleged assaults occurred at different times and places and involved different forms of behavior. All the examinations testified to herein took place in appellant's office exam room without a nurse present, and with only one exception, without a gown or sheet for cover when they were undressed. None of the women knew each other prior to making their complaints, and none had seen any of the others' written statements before making their own. The evidence pre-

sented by these witnesses was admissible under Rule 404(b), as it provided additional proof of motive, opportunity, intent, plan, knowledge, and absence of mistake or accident. It was independently relevant to rebut appellant's argument that no inappropriate or criminal conduct occurred during the exams and that the victims fabricated their stories because they needed money and wanted to sue him to get money damages. *See Davis, supra.* Further, as pointed out by the State, the jury was properly instructed on Rule 404(b) evidence; thus, no error in the admission occurred. Finally, the trial court properly exercised its discretion under Rule 404(b) in limiting the number of Rule 404(b) witnesses the State could produce.

Second, appellant urges that the trial court abused its discretion when it refused to allow him to present evidence of Ms. Davis's hot checks under Rules 404(b), 607, 608, and 609 to impeach her credibility and show her untruthfulness. The Arkansas Rules of Evidence allow for a witness's credibility to be attacked under Rule 607, for evidence to be admitted to show a witness's untruthfulness under Rule 608, and for a witness's credibility to be impeached by proof of prior convictions for crimes of untruthfulness under Rule 609. Before trial, the State moved to exclude any evidence regarding the hot-check charges to which Ms. Davis had pled guilty the week before. Appellant insinuated that the prosecutor's office had motive to reduce Ms. Davis's charges to misdemeanors and withhold presenting the agreed order to the court to avoid tainting Ms. Davis's testimony in this case. The trial court disallowed the hot-check evidence because no conviction had been entered.

Appellant submits that Rule 609 does refer to convictions and that the trial court correctly held that there was not yet a conviction because the order had not been entered. However, he argues that the agreement had been reached, and Ms. Davis had technically pled guilty to these crimes of untruthfulness. He submits that to allow the State to skirt Rule 609 when the State alone had the power to hold up drafting the order was unfair and prejudicial.

He further argued to the trial court that the evidence was admissible under Rules 404(b), 607, and 608 because it showed her financial motive to lie about appellant. Appellant proffered the evidence, and he now argues that had he been able to present his evidence to the jury, Ms. Davis's credibility may have been impeached. He points out that the State made no arguments against this evidence other than the fact that it was not yet a conviction. He further points out that the trial court gave no rationale for denying his request, other than to say it was not allowed under Rule 609.

The State points out that Rule 607 allows an attack on the credibility of a witness. Rule 609 provides that any party may attack the credibility with proof of a felony conviction or any conviction if the crime involved dishonesty or false statement. Here, though Ms. Davis was the subject of felony hot-check charges that were pending at the time of trial, she had not been convicted, and thus, there was no evidence that could be admitted under Rule 609. The State argues that a statement of intent to enter a plea is meaningless in light of Arkansas Rule of Criminal Procedure 26.1(a) (2009), which gives every defendant the right to withdraw a guilty or nolo contendere plea before it has been accepted by the trial court. We agree, therefore, that because there was no conviction, the evidence was not admissible under Rule 609.

As to Rule 608, the State contends that a hot-check charge or conviction did not reflect on appellant's character for truthfulness or untruthfulness, and therefore was not admissible. *See Sitz v. State,* 23 Ark. App. 126, 743 S.W.2d 18 (1988) (though embezzlement or other forms of theft are crimes probative of dishonesty, they are not crimes probative of untruthfulness). Arguing alternatively, the State claims that the hot-check charges did not reflect on Ms. Davis's character for untruthfulness as there could be other explanations for the returned checks, such as a co-account holder who closed the account without telling her. Without a conviction, the evidence is merely speculative. We find no abuse of discretion in disallowing the evidence under Rule 608.

Finally, appellant's argument that the evidence should have been allowed under Rule 404(b) to show Ms. Davis's motive for filing criminal charges against him is speculative in view of the small amounts of the checks and the fact that the hot-check charges had been pending against her for nearly two years before she was assaulted by appellant and for nearly three years by the time of his trial. Further, appellant was allowed to introduce a copy of the civil complaint Ms. Davis had filed against him, and he could have easily argued from that that greed was her motive. Therefore, we hold that there was no prejudice in disallowing the evidence of the hot-check charges.

Affirmed.

HENRY and BROWN, JJ., agree.