THOMAS LINVILLE COLEMAN *v.* STATE

5274                                     415 S. W. 2nd 549

Opinion delivered June 5, 1967

*Edward S. Maddox* and *Rice L. VanAusdall,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. This is a case initiated under the provisions of our Criminal Procedure Rule No. 1, wherein petitioner (appellant), Thomas Linville Coleman, seeks to vacate a sentence imposed by the Poinsett County Circuit Court on March 13, 1964, Coleman being sentenced to a term of 18 years in the penitentiary, following a jury verdict, which found him guilty of murder in the second degree. In his motion, Coleman asserts that his constitutional rights were violated in several respects, all of which will be subsequently discussed. The Poinsett County Circuit Court appointed counsel to represent Coleman on this petition, and, after an extensive hearing, the trial court denied the petition and remanded Coleman into the custody of the Superintendent of the Arkansas State Penitentiary. From the judgment so entered, appellant brings this appeal.

The trial judge (who did not preside at the original trial) conducted a full hearing, and, at the conclusion thereof, rendered a comprehensive opinion, probably the most extensive and thorough opinion delivered in one of these post-conviction hearings, which will be quoted from extensively throughout our own opinion.

It is first asserted that appellant was not given a preliminary examination, but there is no merit in this contention. A short time after the homicide, Coleman employed a Poinsett County lawyer to represent him. A hearing was scheduled before a magistrate, but counsel waived this hearing. This waiver, of course, has been frequently employed since prosecuting attorneys were

given the authority to charge persons with crime by information; in fact, contrary procedure (conducting preliminary hearings) is rather rare. At any rate, the prosecutor proceeded to file an information against Coleman, charging him with murder in the first degree, and a warrant was served upon appellant. Within three days, bail was fixed at $7,500.00, and Coleman, upon supplying bail, was released from jail.

It is asserted that Coleman should have been indicted by the grand jury, rather than being charged by information filed by the prosecuting attorney, as heretofore mentioned. This point has been passed upon by the United States Supreme Court, and held to be without merit. See *Hurtado* v. *California*, 110 U. S. 516. Our own court has likewise held the contention to be without substance. *Turney* v. *State*, 239 Ark. 851, 395 S. W. 2d 1.

It is alleged that Coleman was denied the right to counsel, in that his counsel was so inadequate as to amount to his being deprived of this right. The record reflects that, after employing his first attorney, appellant proceeded to employ another attorney from Cross County to assist in his defense. Let it be remembered that these lawyers were not appointed by the court, but were retained by Coleman himself. Appellant complains that his counsel did not properly select the jury,[1] refused to call several witnesses that he wanted to testify, used a witness that he (Coleman) did not want to use (and whose testimony according to appellant favored the state), and did not conduct the trial in a competent manner.[2] These complaints, as commented on by the presiding judge at the post-conviction hearing, relate to trial strategy or tactics. As stated in *U. S. ex rel Robinson* v. *Pate*, 312 F. (2nd) 161 (cert. den.):

---

[1] According to Coleman, his lawyers "had not even disqualified any of the jurors on *voir dire* examination."

[2] Coleman stated, "One objection made during the trial. * * * Just to make it look good to the court, whatever it was, didn't amount to anything."

"*  *  * Petitioner lists a number of purported errors of omission and commission in his counsel's conduct of the case. All of these relate to trial strategy or tactics, and involve elements of discretion and judgment on which skilled and experienced advocates might honestly disagree, particularly after the event."

The trial court also commented in its opinion that the two lawyers "vigorously defended the petitioner. This is revealed in their pre-trial study of the jury panel, the *voir dire* examination, and the challenges exercised. With reference to the failure to call witnesses, the record indicates twenty witnesses were called and examined. That a witness might not have been helpful to the defense on all counts is not unusual. Some witnesses, such as Eldridge in this case, have to be called in order to establish a chain of custody of a vital piece of evidence. That they might testify adversely in some other area cannot be avoided."

Appellant makes additional complaints against one of his attorneys. While not at all clear from the record, it seems that one or two witnesses, who testified for the state, had formerly served in the penitentiary, and appellant contended that this attorney had "Sponsored" this man (or men) when paroled. Like the trial court, we do not grasp the significance of this testimony, but this attorney, in testifying,[3] denied that he had sponsored any prisoner, and stated that he had never signed a parole agreement with anybody.[4] The trial court found that the attorney was not a sponsor of a "key" witness parolee as contended by Coleman.

Appellant further asserts that this same attorney had a conflict of interest in that Coleman sold property in order to raise money for his defense and this lawyer represented the purchaser; it is contended that a less

[3] Both lawyers, who served in the original trial, testified at length during the instant hearing.

[4] He did state that he might have filed monthly reports for the sponsor.

amount was paid for the property than had been agreed upon. The attorney denied this accusation, stating that he did not represent the purchaser of the land, but represented Coleman only and that all papers that he prepared, in connection with the sale, were prepared at the request of appellant. The trial court found:

"* * * With reference to the 'Land Sale,' it is well established that the sale was engineered by the defendant and his family to raise money for his defense. The transaction was directly with the purchaser who employed his own attorneys to complete the sale. The only thing brought out as to [the Coleman attorney's][5] participation was that he prepared the contract for the defendant. Nothing has been offered to show that the contents of the contract were anything other than that which had been agreed upon between Coleman and Miller, the purchaser."

Coleman's last complaint, relative to his lawyers, is that they did not appeal the case. Both lawyers testified that they were not paid to perfect an appeal, and one stated that he felt that Coleman had but little chance to obtain a reversal, and he advised against it. At any rate, both stated that Coleman decided to forego an appeal, and to endeavor instead to obtain a pardon from the Governor's office. The Circuit Judge commented as follows on this phase of the case:

"Counsel for the defendant did not appeal the case to the Arkansas Supreme Court as alleged by petitioner. The answer to this as ground for relief at this hearing is that they were not employed to do so. Petitioner was not indigent and could have employed his trial counsel or any other attorney for that matter to perfect the appeal. In this area it is more than apparent that the defendant, his family and advisors had come to the conclusion that they could obtain more immediate and conclusive relief from the jury's verdict by pursuing the matter politically through pardon and parole channels

---

[5]This terminology is used in lieu of the attorney's name to prevent possible embarrassment.

than through more appropriate legal processes. That such thinking should have considerable present day currency is deplorable. However, in this endeavor failure was met, and it is both displeasing and regrettable that this failure should be rationalized into a charge of inadequacy of counsel by petitioner.''

Finally, Coleman contends that the trial judge (who tried the original case) went into the jury room and communicated with the jury after it had been in deliberation 15 or 20 minutes. Testimony to this effect was presented by Clifford Coleman and James Coleman, sons of appellant, who testified that one of the jurors asked the judge to come into the room, and the jurist at first refused. The juror then said, ''Judge, we need to ask you a question,'' and, according to the witnesses, the judge then went into the room with the jury, stayed about 5 minutes, and came back out. One of the sons stated that the judge went into the jury room twice. This testimony was emphatically denied by the judge, himself, the court reporter, and the two attorneys who represented Coleman on trial. The judge who conducted the present hearing stated:

''As to the trial judge having improperly communicated with the jury, this is a clear cut question of fact. This court believes that the trial judge did not do so. He so testified and his testimony is being accepted as true. This finding is buttressed by the belief that he would not have done so at the conclusion of a hard fought trial well knowing such a communication as testified about herein would certainly have constituted reversible error. Nothing in the record indicates anything but that the trial judge presided in a completely impartial manner.''

Not only is there substantial evidence to support the findings of the trial court, but we are also of the view that the testimony weighs heavily against appellant's contentions.

All asserted errors have been examined, and we agree with the Poinsett Circuit Court that the record does not reflect that the petitioner was denied any constitutional right secured to him by either the Constitution of the United States or the Constitution of the State of Arkansas.

The judgment is affirmed.

FOGLEMAN, J., disqualified.