JACK R. BELL, SR. *v*. THE STATE OF ARKANSAS

5315                                              422 S. W. 2d 668

Opinion delivered January 15, 1968

*Willis L. Plant,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee

LYLE BROWN, Justice. This is a Rule 1 case. Appellant, Jack R. Bell, Sr., was convicted in April 1966, of first degree murder. There was no appeal. His present petition for release alleges certain constitutional rights to have been violated. That petition was denied and Bell appeals.

In 1964 Bell, while on parole from the Arkansas penitentiary, went to Florida. A parole violation warrant was issued for his return. He was taken into custody in Florida and waived extradition to Arkansas as a parole violator. At that time Bell was also under suspicion of having committed a murder in Monroe County, Arkansas. However, that suspicion was not revealed to Bell at the time of his apprehension in Florida. Shortly after the return trip to Arkansas began, Bell, without being questioned or coached by the officers, revealed to them that he had committed the homicide but explained it was in self-defense. Because of that admission he was returned to the jail in Monroe County rather than to the penitentiary. Other pertinent facts will be related as we list and discuss the points here raised by appellant.

1. Appellant contends that the officers should not have permitted him to make the oral confession on the return trip without first advising him of his constitutional rights; that the confession made was used against him in the trial of the case. First, we point out that the *Miranda* warnings are not applicable. *Miranda* v. *Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Bell's trial was begun before June 13, 1966, the effective date of the *Miranda* warning requirements. Second, it is undisputed that Bell volunteered the information that he committed a homicide. In the Rule 1 hearing one of the returning officers so testified. Bell corroborated the officer in these words: "I voluntarily told them and it was not a killing, it was justified homicide." His was a spontaneous admission, as was the situation in *Bivens* v. *State,* 242 Ark. 362, 413 S. W. 2d 653 (1967).

2. It is next asserted that "the legal rights of the appellant were violated by officers Davidson and Belcher, when they took him into custody in Florida, well knowing that he would face a murder charge, by not advising him of that fact and his rights as to extradition."

When Bell waived extradition as a parole violator no murder charge was pending against him. In fact he was not so charged until some four months after his return. At the time of his extradition it is true he was suspected of having committed a homicide but that fact is of no aid to appellant. As respects interstate extraditions (as contrasted with international extraditions) a defendant can be tried for a crime other than that for which he was extradited. *Lascelles* v. *Georgia,* 148 U. S. 537, 13 S. Ct. 687 (1892), cited with approval in *Frisbie* v. *Collins,* 342 U. S. 519, 72 S. Ct. 509 (1952). See *Elmore* v. *State,* 45 Ark. 243 (1885).

3. Appellant was prosecuted under an Information filed by the prosecuting attorney in lieu of a grand jury indictment. The constitutionality of that procedure is

questioned but the point is without merit. *Coleman* v. *State*, 242 Ark. 751, 415 S. W. 2d 549 (1967).

4. This point is that "the court erred in not obtaining witnesses for the appellant, who would have testified 'the deceased had no money, eliminating the motive for the robbery." At the Rule 1 hearing, Bell testified that at the trial he asked of the court and the sheriff that certain witnesses (whom he does not now name) be brought into court to testify in his behalf and they were not produced. That was all the evidence to support the contention. The trial court found no merit in the contention. Judge Waggoner presided both at the trial and at the Rule 1 hearing. Mr. Plant was Bell's court-appointed counsel at both hearings. Had there been any truth-in-fact in the allegation those officers would have been aware of it. Bell was free to call either or both as witnesses, along with the sheriff. The failure to produce an available witness who assertedly had knowledge of Bell's communication creates a presumption that the testimony, if produced, would be unfavorable. *Watts* v. *State*, 222 Ark. 427, 261 S. W. 2d 402 (1953).

The proper procedure for obtaining witnesses is to obtain subpoenas. Their issuance is routine and a matter of record. Bell produced no such instruments at the hearing. Since Bell and the deceased traveled through several states immediately prior to the homicide it could well be that most, if not all, of his desired witnesses were beyond the immediate jurisdiction of the court. If Bell in fact requested witnesses, when did he make the request? Was it timely? We cannot tell from the record. The burden was on Bell, not only to show that he requested witnesses, but that it was done in the manner provided by law, that the request was timely made, and that the witnesses were amenable to subpoena. His proof is wholly lacking.

5. Bell's final contention is that the court erred in not bringing him to trial at an earlier date. Under Ark.

Stat. Ann. § 43-1708 (Repl. 1964), he was entitled to be brought to trial before the end of the second term after the charge was filed. When an accused is incarcerated the State has the burden of showing the failure to bring him to trial within the statutory period was due to lack of time to try the case or was delayed at the request of the prisoner. *Beckwith* v. *State*, 238 Ark. 196, 379 S. W. 2d 19 (1964). The record shows he was in court on April 29, 1966, entered a plea of not guilty and agreed to the case being passed. He was thereafter tried on the fourth day of the next term. His plea and agreement to pass were in the second term following the filing of the charge. The record refutes Bell's final point.

Affirmed.