Cite as 2020 Ark. App. 523

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-20-193

| | | |
|---|---|---|
| | | **OPINION DELIVERED:** NOVEMBER 18, 2020 |
| DURRELL BARNUM | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-18-1015] |
| V. | | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Durell Barnum appeals his conviction by a Faulkner County jury on one count of rape for which he was sentenced to forty years' imprisonment in the Arkansas Department of Correction (ADC). Barnum argues that the circuit court (1) erred in denying his motion for directed verdict because there was insufficient evidence of the forcible-compulsion element to support his rape conviction; (2) abused its discretion by denying him a jury instruction on fourth-degree sexual assault; (3) erred in finding that his prior conviction for armed bank robbery was a "serious violent felony offense" for the purpose of sentence enhancement; (4) abused its discretion by refusing to allow him to call Tollece Sutter as an impeachment witness; (5) abused its discretion by denying his motion for a mistrial on the basis of an improper closing argument; (6) erred by permitting the State to make an improper rebuttal-closing argument; and (7) abused its discretion by allowing Dr. Rachel Clingenpeel

to testify that the victim's lack of physical injuries was consistent with 95 percent of all pediatric sexual-abuse patients. We affirm.

I. *Facts and Procedural History*

This appeal arises out of events that took place on the night of March 17, 2018. Then fourteen-year-old J.G. went to sleep on the couch in the living room of her sister's apartment. Later that night, Barnum, who was staying in the same apartment with his girlfriend, Valencia Garner, woke up J.G. by standing over her, saying, "Give me some." J.G. understood that Barnum was demanding sex, and she told him no. J.G. reported that Barnum then pulled down her pants and underwear, vaginally raped her, and eventually flipped her onto her stomach and ejaculated on her buttocks.

J.G. began to feel sharp pains below her stomach, went to use the restroom, and then lay back down on the couch. She later left a note for her sister, Jasmine Hoskins, on her sister's phone explaining that Barnum had raped her. The next morning, J.G. went to her sister's bedroom to get dressed for church. When she bent over to pick up her clothes, the continuing pain below her stomach caused her to cry, which woke Hoskins. At that time, Hoskins read the note and confronted Barnum, who abruptly left the apartment.

Hoskins took J.G. to Arkansas Children's Hospital where a rape-test kit was performed. The sexual assault nurse examiner (SANE), Kristen Bradley, took vaginal, rectal, and oral swabs of J.G. and also swabbed her buttocks. The swabs were sent to the Arkansas State Crime Laboratory (ASCL) for testing. Paul Lawson, a forensic DNA analyst for the ASCL, was able to extract male DNA from the vaginal, rectal, and buttock swabs, but only

the rectal swab produced a large enough sample to enable a DNA comparison. Alexa Harrod, another forensic DNA analyst for the ASCL, compared the DNA found on the rectal swab with a sample of Barnum's DNA and determined that they were, by all scientific certainty, a match.

Barnum was originally charged with rape pursuant to Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2019) for engaging in sexual intercourse or deviate sexual activity with someone who was less than fourteen years old. However, because J.G. was fourteen when the rape occurred, the State amended the charge to allege a violation of Ark. Code Ann. § 5-14-103(a)(1) (Supp. 2019) for engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion.

Just before the jury trial began, Barnum moved in limine to preclude the State's two medical witnesses from opining about the veracity—or lack thereof—of J.G.'s allegations. The prosecutor noted that he did not "anticipate anything being elicited from either medical personnel that will testify that they will give an opinion that [J.G. is] telling the truth based upon her submitting to a rape kit." The circuit court then ruled: "[A]s to the medical people giving their opinion as to the truthfulness of a particular witness, they'll not be allowed to do that. They may, of course, testify as to their findings."

At trial, Nurse Bradley testified about the full-body examination she performed on J.G. She stated that she did not find any bruising, swelling, cuts, or bleeding on J.G.'s body. She explained that she performed a pelvic exam on J.G. and found no bleeding in the vaginal area; no signs of injury around the vagina; no signs of injury noted to the hymen; and no

3

findings of acute or healed anal/genital trauma. But Nurse Bradley clarified that the absence of physical signs of trauma does not mean that a sexual assault did not occur and that in most cases there is no physical trauma.

Dr. Clingenpeel testified regarding her review of Nurse Bradley's examination of J.G. Dr. Clingenpeel confirmed that "[t]here were not any physical-exam abnormalities that were diagnostic of trauma." Furthermore, Dr. Clingenpeel said, "[S]he had essentially a normal anal/genital exam . . . on her evaluation. And that is the case for about ninety-five percent of all pediatric sexual[-]abuse patients that we see." Barnum's counsel objected arguing that this testimony violated the circuit court's pretrial grant of his motion in limine.

The circuit court found the testimony up to that point to be admissible and permitted the prosecutor to continue with the line of questioning. Dr. Clingenpeel then testified that "[i]n the vast majority of cases of child sexual abuse, there are not any physical findings that are diagnostic of trauma" and explained the medical reasons for why the majority of cases do not have any physical findings of trauma. The prosecutor ended the direct examination by asking: "So, it is possible for a rape to occur or a sexual assault to occur and not cause any physical injury whatsoever?" Dr. Clingenpeel responded that it was "not only possible; it is normal and expected."

Testimony indicated that there were numerous people staying in the apartment on the night in question—including a toddler asleep in the living room where the rape allegedly occurred—but no evidence was presented that any of the other occupants heard anything indicating that a forcible rape was occurring. J.G. even called her mentor, Mary Nabholz,

4

to speak with her around 2:00 a.m., yet she never mentioned an allegation of sexual assault. Likewise, there was no evidence presented that Barnum threatened to harm J.G. if she told anyone about their encounter.

At the close of the State's evidence, Barnum moved for a directed verdict on the one count of rape, based on the lack of evidence of forcible compulsion. The State responded that physical force, as would be defined in the rape jury instructions, means any bodily impact, restraint, or confinement. And bodily impact in this case is the act of Barnum's being on top of J.G. when he raped her, and that is enough to survive a motion for directed verdict. The circuit court denied Barnum's motion, stating the nature and extent of any forcible compulsion beyond the prima facie case would be the province of the jury.

During the jury-instruction conference following the close of the case, Barnum argued that the jury should be instructed regarding the lesser-included offense of sexual assault in the fourth degree pursuant to Ark. Code Ann. § 5-10-110(b)(3) (Repl. 2013). The prosecutor argued that sexual assault in the fourth degree required proof of different elements; thus, it was not a lesser-included offense of rape. The circuit court denied Barnum's request to give the lesser-included instruction on that basis, and Barnum proffered his proposed instruction.

Barnum renewed his initial motion for directed verdict at the close of all evidence, which the circuit court again denied. During closing argument, the prosecutor stated:

> Again, the defense asked several questions on—"Well, did you bite him? Did you scratch him? Did you scream? Did you call 911?" That's not the legal standard and it's not the moral standard either. How dare he say that she didn't do enough to prevent this.

5

Barnum's counsel objected, saying, "This is improper argument. It's critical of my client's constitutional right to cross-examine witnesses. The State is now arguing rape according to a moral standard. This is improper, Your Honor." The prosecutor acknowledged the objection saying, "I won't say that word again."

Barnum's counsel then moved for a mistrial, arguing that the prosecutor's statement was "solely designed to inflame the passion of the jury." The circuit court denied Barnum's motion and instructed the jury that the arguments of counsel are not evidence and not to be considered.

Later, during the State's rebuttal closing argument, the prosecutor stated: "In this day and age, you've heard the phrase, 'You can use your common sense.' With sexual contact, sexual intercourse, we tell our daughters, we tell our sons, no means no." Barnum's counsel objected, arguing that "no means no" was an inaccurate statement of the law regarding rape by forcible compulsion. The prosecutor responded that "that is the first part of showing forcible compulsion. No means no and to continue after hearing no shows force." The circuit court overruled the objection, and the prosecutor continued with the argument:

> We tell our sons and daughters – we teach them no means no. And why do we do that? Because sexual contact is something that is so intimate, so personal, that to violate someone who says no is a crime. To continue to have sex with someone after they say no to something so intimate is criminal in nature.

Barnum was convicted of rape and sentenced to a term of forty years' imprisonment in the ADC as a habitual offender to be served without any opportunity for parole pursuant

to a sentencing order filed on November 15, 2019. He filed a timely notice of appeal on November 25.

II. *Discussion*

A. Sufficiency of the Evidence Regarding Forcible Compulsion

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Dortch v. State*, 2018 Ark. 135, at 5, 544 S.W.3d 518, 522. Appellate courts affirm the conviction if there is substantial evidence to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.*

The appellate court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *E.g.*, *Johnston v. State*, 2020 Ark. App. 446, at 3, 608 S.W.3d 162, 164. The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5–14–103(a)(1). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5–14–101(2); *Hillman v. State*, 2019 Ark. App. 89, at 2, 569 S.W.3d 372, 374. "Physical force" means any bodily impact, restraint, or confinement, or the threat thereof. *E.g.*, *Hillman*, 2019 Ark. App. 89, at 2, 569 S.W.3d at 374. The jury instruction given in the case stated that "physical force" means "any bodily

impact, restraint, or confinement." *See also* Ark. Code Ann. §§ 5-2-601(6) and 5-12-101(a) (Repl. 2013).

Barnum concedes that sufficient evidence was presented that he engaged in sexual intercourse with J.G. for purposes of appellate review. But he argues that no evidence was presented—let alone substantial evidence—that he did so by forcible compulsion. Barnum submits that even in the light most favorable to the State, the evidence indicates a nonforcible sexual encounter. Barnum points out that sexual contact with an underage person does not constitute the use force in and of itself, *see Myers v. State*, 2017 Ark. App. 617, at 4, 535 S.W.3d 301, 303–04, in which this court rejected the definition of "force" to include any sexual act against children. He asserts that even if it is true that he did have sex with J.G., such evidence does not constitute proof of the specific element of forcible compulsion.

We disagree. The test used to determine whether a rape was committed with the requisite physical force is "whether the act was against the will of the party upon whom the act was committed." *Arendall v. State*, 2010 Ark. App. 358, at 10, 377 S.W.3d 404, 411. This court has held that as long as the act is committed against the victim's will, the "quantum of force" need not be considered. *Id*. The Arkansas Supreme Court has held that forcible compulsion has been demonstrated when sexual contact occurs after the victim told the defendant that she "didn't want to" have sex. *Canard v. State*, 278 Ark. 372, 374, 646 S.W.2d 3, 4 (1983).

J.G. testified that she was awakened by Barnum's standing over her, telling her, "Give me some." She understood that to be Barnum demanding sex, and she told him no. Instead of accepting her answer, he proceeded to rape her. J.G. testified that the sex was without her consent, that his full body weight was on top of her, and that she would not have been able to push him off. J.G.'s testimony alone is sufficient to constitute substantial evidence to sustain a conviction for rape by forcible compulsion. *See, e.g.*, *Brown v. State*, 374 Ark. 341, 343, 288 S.W.3d 226, 228–29 (2008). Moreover, this court recently upheld a rape conviction challenged on this issue, where the facts were extremely similar, and the victim testified that she made clear that she did not want to have sex. *E.g.*, *Holland v. State*, 2020 Ark. App. 434, at 12–14. Under the controlling standards and authority, the evidence was sufficient to establish Barnum's guilt. Accordingly, we hold that the circuit court did not err in denying Barnum's motion for directed verdict.

### B. Denial of Barnum's Proffered Jury Instruction for the Lesser-Included Offense of Sexual Assault in the Fourth Degree

Arkansas Code Annotated section 5-1-110(b) states:

A defendant may be convicted of one (1) offense included in another offense with which he or she is charged. An offense is included in an offense charged if the offense:

(1) Is established by proof of the same or less than all of the elements required to establish the commission of the offense charged;

(2) Consists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged; or

(3) Differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission.

9

A person commits sexual assault in the fourth degree in violation of Ark. Code Ann. § 5-14-127(a)(1)(A) (Repl. 2013) if the person is twenty years of age or older and engages in sexual intercourse or deviate sexual activity with another person who is less than sixteen years of age and not the person's spouse.

This court reviews issues of statutory construction de novo because it is for the reviewing court to decide what a statute means. *E.g.*, *Reagan v. Dodson*, 2016 Ark. App. 598, at 8, 509 S.W.3d 654, 659. The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* In construing a statute, this court places it beside other statutes relevant to the subject matter in question and ascribes meaning and effect to be derived from the whole. *E.g.*, *Myers*, 2017 Ark. App. 617, at 3, 535 S.W.3d at 303. The court construes a statute so that no word is left void, superfluous, or insignificant and gives meaning and effect to every word in the statute, if possible. *Id.*

Barnum argues that the circuit court misinterpreted subsection 5-1-110(b)(3) to mean the same thing as subsection (b)(1), thus rendering subsection (b)(3) essentially "superfluous and meaningless because that's already directly covered in (b)(1) of the statute." He submits that subsection (b)(3) means something different than subsection (b)(1) or the Arkansas Legislature would not have included it in the statute.

Barnum submits that the State's citation to, and the circuit court's reliance on, *Matlock v. State*, 2019 Ark. App. 470, 588 S.W.3d 152, was misplaced because it is inapplicable to these facts. In *Matlock*, the defendant argued that sexual assault in the first degree was a lesser-

10

included offense of rape pursuant to subsection 5-1-110(b)(1). *Id*. at 5–7, 588 S.W.3d at 155–56. Barnum maintains that *Matlock* is distinguishable and has no bearing on this case.

Barnum argues that sexual assault in the fourth degree is a lesser-included offense of rape pursuant to subsection 5-1-110(b)(3) because it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person existed—specifically, that the rape charge involved a greater risk of injury in that it required proof of forcible compulsion whereas sexual assault in the fourth degree required only proof of a sexual act.

We disagree. The elements of fourth-degree sexual assault do not fit within the definition of a lesser-included offense for rape in accordance with either Ark. Code Ann. § 5-1-110(b)(1) or (3). Our supreme court addressed this argument in *Gaines v. State*, 354 Ark. 89, 118 S.W.3d 102 (2003), holding that third-degree carnal abuse was not a lesser-included offense of rape. *Id*. at 96, 118 S.W.3d at 106. At that time, the third-degree carnal-abuse statute, Ark. Code Ann. § 5-14-106(a) (Repl. 1997), stated, "A person commits carnal abuse in the third degree if, being twenty (20) years old or older, he engages in sexual intercourse or deviate sexual activity with another person not his spouse who is less than sixteen (16) years old." *See Gaines*, 354 Ark. at 96, 118 S.W.3d at 105. The *Gaines* court held that third-degree carnal abuse was not a lesser-included offense of rape because carnal abuse requires the State to prove elements that rape does not, specifically, that (1) the defendant is twenty years old or older; (2) the victim is not the defendant's spouse; and (3) the victim is less than sixteen years old. *Gaines*, 354 Ark. at 96, 118 S.W.3d at 105–06.

Relevant to the application to this appeal, third-degree carnal abuse subsequently was recodified in 2001 as fourth-degree sexual assault. *Compare* Ark. Code Ann. § 5-14-106(a) (Repl. 1997) with Ark. Code Ann. § 5-14-127(a)(1)(A) (Repl. 2013); see also Act of Apr. 18, 2001, No. 1738, §§ 5, 8, 2001 Ark. Acts 7566, 7570–71 (repealing third-degree carnal abuse and adopting fourth-degree sexual assault).

Similarly, in *Matlock*, 2019 Ark. App. 470, at 6–7, 588 S.W.3d at 156, this court held that first-degree sexual assault was not a lesser-included offense of rape because the former requires proof that the victim was not the defendant's spouse. *See also Joyner v. State*, 2009 Ark. 168, at 14, 303 S.W.3d 54, 61 (holding that second-degree sexual assault is not a lesser-included offense of rape because it requires proof of two elements that rape does not—the defendant's age and marital status with respect to the victim).

The specific provision of the rape statute under which Barnum was convicted provides that a person commits rape if he engages in sexual intercourse with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1). A person commits the offense of fourth-degree sexual assault when, being twenty years of age or older, he engages in sexual intercourse with another person who is less than sixteen years of age and not his spouse. Ark. Code Ann. § 5-14-127(a)(1)(A).

In light of the specific definitions of the two offenses in question, the circuit court correctly refused to instruct the jury that fourth-degree sexual assault was a lesser-included offense of rape under subsection 5-1-110(b)(1) because fourth-degree sexual assault requires two elements be proved that rape does not—that the accused be twenty years old or older

12

and that the victim is not the accused's spouse. *See, e.g.*, *Bonds v. State*, 310 Ark. 541, 544, 837 S.W.2d 881, 883 (1992). And contrary to Barnum's argument, it is not a lesser-included offense under § 5-1-110(b)(3) because fourth-degree sexual assault and rape manifestly do not differ "only in the respect" to a less serious injury as required by § 5-1-110(b)(3) because the fourth-degree sexual-assault offense requires two additional elements be proved. Accordingly, we hold that the circuit court did not abuse its discretion in denying Barnum's requested jury instruction for fourth-degree sexual assault.

### C. Finding Barnum's Federal Conviction for Armed Bank Robbery Was a "Serious Violent Felony Offense"

The interpretation and application of an Arkansas statute is a question of law that this court decides de novo. *E.g.*, *Harris v. State*, 2018 Ark. 179, at 10, 547 S.W.3d 64, 69. Statutes are read to give effect to the intent of the legislature. *E.g.*, *Ealy v. State*, 2017 Ark. App. 35, at 3, 511 S.W.3d 355, 357. A statute is construed the way it reads, giving the words their ordinary and usually accepted meaning in common language. *E.g.*, *id.* In addition, the statute is construed so that every word is given meaning and effect and no word is left void, superfluous, or insignificant. *Krol v. State*, 2018 Ark. App. 512, at 6, 563 S.W.3d 586, 589.

This court does not apply the rules of statutory interpretation if a statute's meaning is plain and unambiguous. *E.g.*, *Ealy*, 2017 Ark. App. 35, at 3, 511 S.W.3d at 357. While criminal statutes are strictly construed with doubts resolved in the defendant's favor, *see Handy v. State*, 2017 Ark. App. 74, at 6–7, 510 S.W.3d 292, 296–97, the rule of lenity applies only when statutory language is ambiguous, cannot be used to alter a statute's plain

meaning, and is inapplicable when it would lead to an absurd result. *Krol*, 2018 Ark. App. 512, at 6, 563 S.W.3d at 589–90.

The State alleged in the felony information that Barnum was subject to an enhanced sentencing range pursuant to Arkansas Code Annotated section 5-4-501(c)(1) because he previously had been convicted of a "serious felony involving violence." Specifically, Barnum was convicted of armed bank robbery pursuant to 18 U.S.C. § 2113(a) & (d) on October 15, 2009.

Section 5-4-501(c) provides:

(1) Except as provided in subdivision (c)(3) of this section, a defendant who is convicted of a serious felony involving violence enumerated in subdivision (c)(2) of this section and who previously has been convicted of one (1) or more of the serious felonies involving violence enumerated in subdivision (c)(2) of this section may be sentenced to pay any fine authorized by law for the serious felony involving violence conviction and shall be sentenced:

(A) To imprisonment for a term of not less than forty (40) years nor more than eighty (80) years, or life; and

(B) Without eligibility for parole or community correction transfer except under § 16-93-615.

(2) As used in this subsection, "serious felony involving violence" means:

(A) Any of the following felonies:

. . . .

(iv) Aggravated robbery, § 5-12-103;

. . . .

(B) A conviction of a comparable serious felony involving violence from another jurisdiction.

Just before sentencing, Barnum's trial counsel argued that the federal statute was not comparable to aggravated robbery for purposes of the habitual-offender enhancement because the federal statute required only the use of a "dangerous weapon," whereas the state statue required a use or threatened use of a "deadly weapon." The circuit court disagreed finding that "dangerous weapon" and "deadly weapon" were sufficiently similar; thus, Barnum's prior conviction constituted a "serious felony involving violence" for the purpose of the application of the sentence-enhancement statute.

The relevant portions of 18 U.S.C. § 2113 provide:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined under this title or imprisoned not more than twenty years, or both.

. . . .

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

Arkansas Code Annotated section 5-12-103 (Repl. 2013) defines aggravated robbery:

(a) A person commits aggravated robbery if he or she commits robbery as defined in 5-12-102, and the person:

15

(1) Is armed with a deadly weapon;

(2) Represents by word or conduct that he or she is armed with a deadly weapon; or

(3) Inflicts or attempts to inflict death or serious physical injury upon another person.

Pursuant to Arkansas Code Annotated section 5-12-102 (Repl. 2013), a person commits robbery if, "with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person."

"Dangerous weapon is defined as an object capable of inflicting bodily injury." *Seyller v. State*, 2019 Ark. App. 423, at 5, 586 S.W.3d 685, 688. "Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury; or anything that in the manner of its use or intended use is capable of causing death or serious physical injury. Ark. Code Ann. § 5-1-102(4) (Repl. 2013).

Barnum argues that the two statutes are not sufficiently comparable because a "dangerous weapon" does not have to be capable of inflicting death or serious physical injury but merely any physical injury. Barnum submits that because the circuit court incorrectly found that the statutes were comparable for purposes of section 5-4-501, he was subjected to the enhanced sentencing range pursuant to section 5-4-501(c)(1)(A) without the benefit of a chance at parole rather than the standard range of ten to forty years or life imprisonment for a Class Y felony pursuant to section 5-4-401(a)(1).

16

We disagree. The circuit court, relying on the language in 18 U.S.C. § 2113(d) that states "puts in jeopardy the life of any person by the use of a dangerous weapon[,]" rejected Barnum's argument and found that these were "comparable violent offense[s.]" In Arkansas, a "deadly weapon" means "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury; or anything that in the manner of its use or intended use is capable of causing death or serious physical injury." Ark. Code Ann. § 5-1-102(4); *Hagar v. State*, 341 Ark. 633, 637, 19 S.W.3d 16, 19 (2000). In order to reach Barnum's conclusion, this court would have to ignore the plain language of the armed-bank-robbery statute that, in pertinent part, requires that the "dangerous weapon" "put in jeopardy the life of any person[.]" 18 U.S.C. § 2113(d).

The evidence before the circuit court indicated that before federal charges were filed, Barnum was charged in state court with aggravated robbery, a fact that he does not dispute. Barnum pleaded guilty to violating 18 U.S.C. § 2113(d), in essence, admitting to robbing a bank with a weapon that "put in jeopardy the life of any person." Because a weapon that "puts in jeopardy the life of any person" is necessarily "capable of causing death or serious physical injury," any other interpretation impermissibly would alter the meaning of the statute and lead to an absurd result. *See, e.g.*, *Krol*, 2018 Ark. App. 512, at 6, 563 S.W.3d at 589–90. Accordingly, we hold that the circuit court did not err by finding that 18 U.S.C. § 2113(d) was comparable to section 5-12-103 for this purpose.

17

D. Refusal to Allow Barnum to Call Tollece Sutter to Impeach Two Witnesses'
Testimony by Introducing Their Prior Inconsistent Statements

This court reviews the exclusion of proposed impeachment evidence for an abuse of

discretion. *See Scamardo v. State*, 2013 Ark. 163, at 7–8, 426 S.W.3d 900, 904. Arkansas

Rule of Evidence 613(a) (2019) permits impeachment of a witness with a prior inconsistent

statement. When a witness is asked about a prior statement and does not remember making

it, extrinsic evidence of the prior statement is admissible. *Kennedy v. State*, 344 Ark. 433,

445, 42 S.W.3d 407, 414 (2001). The Arkansas Supreme Court has concluded:

> [I]mpeachment of a witness by introducing extrinsic evidence of a prior
> inconsistent statement through the testimony of a second witness or through the
> admission of documentary evidence (regardless of whether the statement was given
> under oath) must be allowed, otherwise Rule 613(b) would have no meaning.

*Scamardo*, 2013 Ark. 163, at 8–9, 426 S.W.3d at 904–05.

Barnum submits that just before the start of the second day of the jury trial, his trial

counsel announced the intention to call Investigator Tollece Sutter to impeach a prior

inconsistent statement made by Detective Fulbright—specifically, that Fulbright did not

remember telling Sutter that he believed that this may have been a case involving consensual

sex. In response, the State moved to exclude Sutter's testimony. He states that the circuit

court ruled that Barnum could not call Sutter to testify about Fulbright's statement because

it was not relevant. Barnum's counsel proffered Sutter's interview summary, which stated:

"Det. Fulbright stated that he believes J.G. but that the sex may have been consensual."

We find no merit in Barnum's argument on this point and note initially that Barnum

misstates the issue that actually was before the circuit court. The record indicates that on

18

the morning of the second day of trial, the State advised the circuit court that Sutter had been released from the State's subpoena, but Sutter had received a call from Barnum that she was needed as a defense witness. Barnum's counsel conceded that Sutter had not been served with a subpoena and acknowledged telling Sutter that she was not compelled to appear and testify. Barnum's counsel explained that he nonetheless wanted Sutter to testify to impeach Fulbright's testimony. The circuit court held that Fulbright's opinion as to whether the sex was consensual was irrelevant and that in order to get Sutter there to testify, Barnum must serve Sutter with a subpoena.

It is Barnum's burden to subpoena witnesses that he desires to testify on his behalf. *See, e.g.*, *Bell v. State*, 243 Ark. 839, 842, 422 S.W.2d 668, 670 (1968). It is unclear from the record what action Barnum was asking the circuit court to take regarding his failure to serve Sutter with a subpoena. But to the extent Barnum was seeking to have the circuit court require Sutter to appear on the basis of the State's subpoena from which Sutter had been released, his argument is misplaced. Barnum is not entitled to rely on the State's subpoena for his own defense. *See, e.g.*, *Raquel-Dieguez v State*, 2015 Ark. App. 626, at 9, 475 S.W.3d 585, 591. Furthermore, he cannot complain about the inability to question a witness due to his own failure to serve a subpoena. *See, e.g.*, *Lagrone v. State*, 90 Ark. App. 183, 189, 204 S.W.3d 568, 572 (2005). Nothing in the record reflects that Barnum asked the circuit court for any relief regarding his failure to serve Sutter with a subpoena—such as asking for a recess or continuance to have her served or secure her presence to testify. Accordingly, we hold that the circuit court did not err in not allowing Sutter to testify.

### E. Denial of Barnum's Motion for Mistrial Based on the Prosecutor's Improper Closing Argument that Effectively Lowered the State's Burden of Proof

A mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial or when it cannot be cured by an instruction. *Halliburton v. State*, 2020 Ark. 101, at 18, 594 S.W.3d 856, 867. The grant or denial of a motion for mistrial lies within the sound discretion of the circuit court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *Id.* In determining whether a circuit court abused its discretion in denying a mistrial motion, we consider factors such as (1) whether the prosecutor deliberately induced a prejudicial response and (2) whether an admonition to the jury could have cured any resulting prejudice. *See Thompson v. State*, 2019 Ark. 290, at 4–5, 586 S.W.3d 163, 165.

A motion for a mistrial must be timely so that the circuit court has the opportunity to correct the alleged error. *See McCoy v. State*, 2010 Ark. 373, at 13, 370 S.W.3d 241, 249. A prosecutor may not make comments meant to inflame the jury's passions, emotions, and prejudices. *See Child v. State*, 2010 Ark. App. 454, at 3.

During the State's closing argument, the prosecutor specifically said, "Again, the defense asked several questions on—'Well, did you bite him? Did you scratch him? Did you scream? Did you call 911?' That's not the legal standard, and it's not the moral standard either. How dare he say that she didn't do enough to prevent this." Barnum's counsel objected that arguing rape according to a moral standard was improper.

Barnum alleges that the State improperly made a plea to the jurors' emotions during closing argument by encouraging the jury that their deliberations should be controlled by moral law rather than by the relevant statute. He submits that no admonition could cure a prosecutor's instruction to abide by the "moral standard" rather than the legal standard in an emotionally charged rape case involving an alleged victim who was a minor.

We disagree. When the judge denied Barnum's motion for a mistrial, he admonished the jury, "I remind you that closing arguments, remarks of the trial are not evidence and not to be considered by you as evidence." The prosecutor made no other reference to a "moral standard." The prosecutor's reference to a "moral standard"—in the context of the argument—was not an attempt to assert moral law over state law or inflame the prejudices of the jury. Rather, it was meant to draw a contrast with Barnum's argument that J.G. was not raped because she did not fight back or have any signs of physical trauma. The comment appeared to be more a request that the jury reject Barnum's misstatement of the law. Because it was able to rectify any confusion that might have been created by equating Arkansas law with a moral standard in its admonition to the jury, we hold that the circuit court did not abuse its discretion by denying Barnum's motion for a mistrial.

### F. Prosecutor's Improper Closing Arguments in Rebuttal

1. *Did an improper statement effectively lower the State's*
*burden of proof regarding the element of forcible compulsion?*

Appellate courts will not reverse the action of a circuit court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the

21

absence of manifest abuse of discretion. *E.g.*, *Tate v. State*, 367 Ark. 576, 582, 242 S.W.3d 254, 260 (2006).

During the State's rebuttal closing argument, the prosecutor stated, "In this day and age, you've heard the phrase, 'You can use your common sense.' With sexual contact, sexual intercourse, we tell our daughters, we tell our sons, no means no." Barnum objected that the prosecution did not present an accurate statement of the law in that "[t]he law is that the sex occurred by forcible compulsion." The circuit court overruled the objection.

Barnum argues that the prosecutor's assertion that having sex with someone after they said no was evidence of force was legally incorrect because, as stated previously, "physical force" refers to "any bodily impact, restraint, or confinement." Ark. Code Ann. § 5-2-601(6). He submits that it does not refer to a defendant's unwillingness to comport with a victim's stated desire and contends that the prosecutor's statement urged the jury to find him guilty of rape by forcible compulsion without proof of that element. Similarly, Barnum argues that the prosecutor's argument lowered the State's burden of proof on a key element of the charged offense. He maintains that the resulting prejudice is obvious given that the forcible-compulsion element was the only contested issue at trial and that the jury ultimately convicted Barnum.

Barnum's argument on this issue is without merit because it is based on a misstatement of the law. He essentially argues that the prosecutor's assertion—that having sex with someone after they said no, was evidence of "force"—is legally incorrect. Although physical force refers to any bodily impact, restraint, or confinement, as explained in greater

22

detail in the sufficiency-of-the-evidence analysis above, the test for physical force is "whether the act was against the will of the party upon whom the act was committed." *Arendall*, 2010 Ark. App. 358, at 10, 377 S.W.3d at 411. Because the prosecutor's statement regarding the law are correct, there is no error. *Anderson v. State*, 353 Ark. 384, 403, 108 S.W.3d 592, 604 (2003).

2. *Prosecutor's reference to jurors' children during rebuttal closing argument*

Although Barnum acknowledges that his trial counsel failed to object specifically to the prosecutor's repeated reference to the jurors' children during rebuttal closing argument, he notes that "no objection is necessary if the circuit court fails to control a prosecutor's closing argument and allows him to go too far." *Wicks v. State*, 270 Ark. 781, 786, 606 S.W.3d 366, 370 (1980). Since *Wicks*, this exception to the contemporaneous-objection requirement has been invoked numerous times to review flagrant and prejudicial remarks by prosecutors that were not objected to at trial. *See, e.g.*, *Ayala v. State*, 365 Ark. 192, 194–95, 226 S.W.3d 766, 768 (2006); *Anderson*, 353 Ark. at 402, 108 S.W.3d at 603–04.

Barnum submits that it is improper for a prosecutor to ask jurors to put themselves in the place of one of the parties. This "Golden Rule" argument has been held to be impermissible because it tends to subvert the objectivity of the jury. *E.g.*, *Nickelson v. State*, 2012 Ark. App. 363, at 13–14, 417 S.W.3d 214, 222 (citing *King v. State*, 317 Ark. 293, 297, 877 S.W.2d 583, 586 (1994)).

Barnum states that by repeatedly invoking "our sons" and "our daughters," the prosecutor implied that the jurors' own children were not safe if he were to be acquitted.

23

He argues that such remarks improperly appealed to the jurors' emotion, passion, and prejudice and subverted their objectivity. *See Child*, *supra*. Because the circuit court erred in failing to correct this error—despite Barnum's counsel's failure to object on this specific issue at trial—Barnum claims that his conviction must be reversed.

Our supreme court specifically rejected this argument in *Buckley v. State*, 349 Ark. 53, 68, 76 S.W.3d 825, 834 (2002), when the court refused to hear an argument that the prosecutor violated the Golden Rule when the objection was not made in circuit court and held that it did not fit within any *Wicks* exception. Accordingly, because Barnum failed to make the argument below, it is not preserved for appellate review.

G. Dr. Clingenpeel's Testimony That J.G.'s Lack of Physical
Injuries Was Consistent With 95 Percent of All Pediatric Sexual–Abuse Patients

The test for admissibility of expert testimony is whether it will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (2019). An important consideration in determining whether the testimony will aid the trier of fact is whether the issue is beyond the ability of the trier of fact to understand and draw its own conclusions. *E.g.*, *Sullivan v. State*, 2012 Ark. 74, at 27, 386 S.W.3d 507, 523. The decision to admit expert testimony is reviewed for abuse of discretion. *Bynum v. State*, 2018 Ark. App. 201, at 15, 546 S.W.3d 533, 543. To show that a circuit court abused its discretion, it must be established that the circuit court acted improvidently, thoughtlessly, or without due consideration, thereby causing prejudice. *Id*. A court's evidentiary ruling will not be reversed absent a showing of prejudice. *E.g.*, *Purdie v. State*, 2010 Ark. App. 658, at 7, 379 S.W.3d 541, 546.

Arkansas appellate courts have recognized that an expert's testimony opining or commenting on the truthfulness of a victim's statement or testimony is generally inadmissible. *Montgomery v. State*, 2014 Ark. 122, at 5–6; *see Cox v. State*, 93 Ark. App. 419, 422, 220 S.W.3d 231, 233–34 (2005) (holding that a court may not permit an expert to bolster the credibility of a victim by expressing an opinion that the victim is telling the truth). Further, our supreme court has held that it was error to allow a psychologist to give testimony that the history by an alleged child victim was consistent with a child who had been sexually abused. *See Russell v. State*, 289 Ark. 533, 712 S.W.2d 916 (1986).

Dr. Clingenpeel was qualified as an expert in the field of child-abuse pediatrics without objection. She testified that J.G. had a normal examination and stated, "[T]hat is the case for about ninety-five percent of all pediatric sexual[-]abuse patients that we see." Barnum's counsel objected to that statement:

> Your Honor, she was getting into an area of saying that patients that they see have no signs of trauma. If the allegation of abuse is true, this is getting into what my motion in limine was about, saying that—bolstering the opinion, bolstering the claims of the complaining witness that—saying just because a jury—there were no findings, her claim still likely would be true. And so, I'm objecting to this opinion, this line of testimony about the percentages of assaults where there are no findings of physical trauma and yet the doctor is going to say the assaults are, in fact—the reports of the assault are, in fact, true.

In responding to the objection, the State explained:

> Your Honor, what she's testifying to is to her expert opinion based on numerous experience[s] in examinations in her field which includes child—child[-]abuse pediatrics which include sexual assault.
>
> The Defense is trying to portray this as she didn't have a bruise on her vagina, she didn't have a cut, she wasn't bleeding. He's trying to present that to the jury as meaning that she—if she didn't have that, then she wasn't raped, which is factually

25

inaccurate and it's medically inaccurate and she should be allowed to present that testimony which is completely contradictory.

The circuit court stated that it understood Barnum's objection to be that the State would not be permitted to ask Dr. Clingenpeel if the findings meant J.G. was telling the truth. Barnum did not voice any disagreement with this interpretation. The circuit court then held that up to that point, Dr. Clingenpeel's testimony was admissible but that the State would not be permitted to imply that the findings meant J.G. was telling the truth.

Barnum cites *Hall v. State*, 15 Ark. App. 309, 311–12, 692 S.W.2d 769, 770–71 (1985), in which a licensed psychologist testified about "the dynamics of child sexual abuse cases," citing specific statistics about common features in such cases. This court reversed and remanded for retrial as a result of the erroneous admission of the testimony. *Id.* at 317, 692 S.W.2d at 773. Barnum argues that similar to *Hall*, the evidence in this case was introduced to show that the circumstances and details in this case match the circumstances and details usually found in child-abuse cases. Specifically, Barnum maintains that the State sought to prove that the absence of physical evidence in this case matches the absence of evidence in the overwhelming majority of pediatric sexual-abuse cases. He argues that Dr. Clingenpeel's testimony was that the absence of evidence of sexual abuse was evidence of guilt. Moreover, Barnum claims that the testimony was also a comment on J.G.'s veracity implying that J.G. was telling the truth because the lack of physical findings comported with the overwhelming majority of sexual-abuse cases.

We disagree. Rather than expressing an opinion that J.G. was telling the truth, Dr. Clingenpeel merely stated that in the vast majority of pediatric sex-abuse cases, there will

26

not be any signs of physical trauma. Rather than opining on J.G.'s truthfulness, as Barnum claims, Dr. Clingenpeel properly rendered a medical explanation based on the findings of the physical examination she performed on J.G. *See Keck v. State*, 2012 Ark. 145, at 6.

Barnum's reliance on *Hall*, *supra*, is misplaced. In *Hall*, this court held that a psychologist's testimony regarding sexual-perpetrator statistics was not the type of evidence to benefit the jury because "it was not introduced to rebut a misconception about the presumed behavior of a rape victim but to prove . . . that the circumstances and details in [the] case match the circumstances and details usually found in child abuse cases." *Hall*, 15 Ark. App. at 316–17, 692 S.W.2d at 773. Here, the expert medical testimony in question specifically sought to rebut "mythologies" about the female genitalia in order to explain why physical injuries are rarely found in examinations for child sexual abuse. This testimony compares more closely with that *Pafford v. State*, 2017 Ark. App. 700, at 11, 537 S.W.3d 302, 309–11, in which this court held that the admission of testimony from a SANE nurse that the physical examination "neither confirmed nor refuted" the reported abuse was not an abuse of discretion. Additionally, this court rejected the argument that this type of testimony bolstered the credibility of the victim. *Id.* at 11, 537 S.W.3d at 311.

Moreover, even had the circuit court erred in admitting the testimony, the error would have been harmless. As demonstrated above, the evidence of Barnum's guilt was overwhelming. Additionally, the error was slight, as Barnum cannot demonstrate prejudice. *See, e.g.*, *Buford v. State*, 368 Ark. 87, 91, 243 S.W.3d 300, 303 (2006). Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be

27

claimed to be prejudicial. *Lacy v. State*, 2020 Ark. App. 224, at 5, 599 S.W.3d 661, 665. Dr. Clingenpeel's testimony regarding the abuse statistic was cumulative to Nurse Bradley's testimony that the absence of physical signs of trauma does not mean that a sexual assault did not occur and "in most cases there's no physical trauma[,]" which was admitted without objection.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.