Cite as 2026 Ark. App. 169

# ARKANSAS COURT OF APPEALS
## DIVISION 1
### No. CR-25-394

| | | |
|---|---|---|
| BILLY BAGWELL | | **Opinion Delivered** March 11, 2026 |
| | APPELLANT | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-23-129] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

Following a jury trial in the Grant County Circuit Court, Billy Bagwell was convicted of rape. On appeal, Bagwell argues that there is insufficient evidence to support his conviction. We affirm.

On December 13, 2023, Bagwell was criminally charged with the rape of his fifteen-year-old stepdaughter, the minor victim (MV). MV lived with Bagwell; her mother, Amy Nicole "Nikki" Bagwell; and her younger sister (MC). MV testified about events that transpired when she and MC were left alone with Bagwell on October 28, 2023. Nikki attended a Halloween party, which caused her to stay out all night. After Nikki left and MC fell asleep, MV stated she consumed a frozen margarita with tequila that Bagwell had made for her. Around 11:00 p.m., MV and Bagwell went into the garage where MV pulled out a weight bar to exercise. Bagwell came up behind her and grabbed her waist, which made her

feel uncomfortable. MV complained of having back pain and Bagwell suggested that the two of them go into the master bedroom, where he told MV to lie face down on the bed so he could "pop" her back. When asked what happened next, MV recounted that Bagwell pulled her sweatpants and underwear down past her knees. MV stated that Bagwell touched "[her] vaginal area" with his hand, which shocked her and caused her to freeze. Bagwell penetrated her labia majora with his fingers and tongue before MV pushed him away, jumped up, ran, and locked herself inside her bedroom. After Bagwell convinced her to unlock her bedroom door, he sat on the edge of the bed next to MV and told her "[h]e wouldn't do it again." MV testified that Bagwell also made her place her hand on a Bible and swear that she would not tell a soul what happened that night. MV testified that initially she did not tell anyone, including her father, who picked her up the next morning.

MV testified further that when Bagwell, Nikki, and MC traveled to Louisiana a week after the incident, she refused to go with them. While her family was away, she confided in her friends about what Bagwell had done to her. She also testified that Bagwell had inappropriately touched her on other occasions before October 2023.

Nikki testified that after she married Bagwell in 2014, she, MV, MC, and Bagwell had moved into a residence in Sheridan. On the evening of October 28, 2023, Nikki attended a Halloween party in Hot Springs while Bagwell agreed to stay home to watch MV and MC. Nikki confirmed that she returned home sometime the following morning and immediately noticed that the mattress in her bedroom was displaced from the box spring. When Nikki questioned Bagwell about why the mattress was displaced, Bagwell initially claimed the

mattress looked normal and then demonstrated by jumping on the bed how it might move.

Nikki asked Bagwell what he did the night before, and he stated that their neighbor had

come over and "they hung out . . . and he drank quite a few beers." Nikki testified that MV

seemed very moody that day after returning home from spending time with her dad, and

Bagwell "seemed off."

Nikki testified that the following Friday she, Bagwell, and MC left town to go to

Louisiana, while MV stayed with Nikki's mother for the weekend. Nikki testified that she

received a call from her mother Friday evening and the conversation went as follows:

> [Her mother] asked, "Are you by yourself?' And I said, "No, but I can be." And
> "What's going on?" And she said, "Just ~ just get by yourself." And so I went
> outside and I'm ~ like, "What's going on?" You know, "Is everything okay?"
> And she said, "Just get [MC] and come home now." And I'm like, "Why? Why?
> What's going on?" I'm thinking somebody died, like my dad or something
> happened. "Why do I need to come home?" She was like, "No, dad's fine." I
> was like, "Where's [MV]? Is [MV] okay?" "She's ~ she's fine. She's going to be
> okay. I just need you to get [MC] and come home." And so I said, "It ~ what
> about [MV]? I need to know something." And she said, "It's" ~ I said, "Is it
> about [MV]? [MV] and what – [MV] and Billy?" And I just ~ my whole body
> started shaking. I just knew immediately when she said that.

Nikki testified that she immediately took MC and left, and that she thought Bagwell

knew something was wrong. Bagwell called her in the car inquiring why they left, and Nikki

responded "you had sex with my daughter."

The State asked Nikki about a prior allegation MV had made about Bagwell several

years ago. She said that she received a call from the mother of one of MV's friends about an

allegation MV had made against Bagwell. According to Nikki, when she and Bagwell

3

approached MV about the allegation, "she just shut down and she said, 'Okay. You're right. Never mind.'" On cross-examination regarding the prior allegation, Nikki testified as follows:

Q.     Okay. So you believed him that time?

A.     Yes, sir.

Q.     Okay. But you don't believe him now?

A.     I believe her.

Q.     Okay, -- but you didn't believe her then?

A.     I wasn't sure at the time.

Q.     But you –

A.     I wanted to believe my husband.

Q.     Okay.

A.     And I wanted to believe that he wouldn't do something like that.

Q.     So –

A.     She didn't tell me this, she told the school. And –

Q.     Okay, but when she told you directly, you sided with your husband, you believed your husband, you didn't believe her, correct?

A.     Yes.

Bagwell moved for a directed verdict at the close of the State's case-in-chief, which was denied. Bagwell then took the stand and denied MV's version of what occurred on October 28, 2023. Instead, he offered the following:

She's been -- this is not -- like I say, it's not the first time she's made these accusations. And every time she's made them is when she was caught doing

4

something she wasn't supposed to be doing. Like she got caught ~ she was ~ her mom caught her cutting herself, smoking marijuana. She's been caught drinking, getting in trouble at school. She got caught with some child pornography stuff with Sheridan High School. That's why she goes to the school she goes to now. But every time she's get in trouble.

Bagwell testified that he had caught MV with vodka in a Stanley stainless cup, so he made her go outside where he was cleaning his muzzle loader. When he finished cleaning the gun, he directed her to go inside, shower, clean her room and go to bed. Bagwell testified that was the last time he saw her until the next morning. Bagwell admitted there were at least two other occasions MV accused him of inappropriate contact, but denied he intentionally touched her. The defense then rested.

Bagwell renewed his motion for directed verdict, which the court denied. The jury found Bagwell guilty as charged, and he was sentenced to twenty years' imprisonment.

Bagwell's sole point on appeal is that the court erred in denying his motion for a directed verdict as the State failed to present substantial evidence that he engaged in sexual intercourse or deviate sexual activity with MV by forcible compulsion.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Severance v. State*, 2024 Ark. App. 87, 684 S.W. 3d 610. When reviewing sufficiency claims, this court will assess the evidence in the light most favorable to the State, consider only the evidence that supports the verdict, and affirm a conviction if there is substantial evidence to support it. *Id.* It is the jury's function to evaluate the credibility of the witnesses and resolve any inconsistencies in the evidence presented at trial, and the jury may choose to believe the State's account of the facts rather than defendant's account. *Id.* Evidence is substantial if it

is of sufficient force and character to reach a conclusion and pass beyond suspicion and conjecture. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2002).

A rape victim's testimony—including a minor child's uncorroborated testimony—may constitute substantial evidence to sustain a rape charge. *McCauley v. State*, 2023 Ark. 68, at 4, 663 S.W.3d 383, 386. In *McCauley*, the minor child testified that McCauley inappropriately touched him. We held that the minor child's testimony alone was sufficient to show that McCauley engaged in deviate sexual activity with the minor child, who was under the age of fourteen.

Under Arkansas Code Annotated section 5-14-103(a)(1) (Supp. 2023) a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. "Deviate sexual activity" means any act of sexual gratification involving "[t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (Supp. 2021). MV's testimony that Bagwell penetrated her labia majora with his fingers and tongue before MV pushed him away was sufficient evidence for the jury to find that Bagwell engaged in deviate sexual activity with her.

"Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping a person. Ark. Code Ann. § 5-14-101(3). Physical force is any bodily impact, restraint or confinement or threat thereof. *Johnson v. State*, 80 Ark. App. 79, 94 S.W.3d 344 (2002). The test used to determine whether an act of deviate sexual behavior was committed with the requisite physical force is whether the act was against the

will of the party upon whom the act was committed. *Barnum v. State*, 2020 Ark. App. 523, 614 S.W.3d 453. As long as the act is committed against the victim's will the "quantum of force" need not be considered. *Canard v. State*, 278 Ark. 372, 646 S.W.2d 3 (1983). Using physical force to remove a victim's underwear and penetrate her is sufficient evidence of forcible compulsion. *Brinkley v. State*, 2025 Ark. App. 312, 715 S.W.3d 142.

In this case, MV testified that Bagwell pulled her sweatpants and underwear down past her knees and penetrated her with his fingers and tongue, which shocked her and caused her to freeze. Under *Brinkley*, this is sufficient evidence of forcible compulsion.

As the court held in *McCauley*, *supra*, any issue regarding the credibility of MV's testimony in the case before us was for the jury to resolve, not for this court to decide on appeal. Through MV's testimony, the jury was presented with sufficient evidence to find Bagwell guilty of rape.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.